514 A.2d 236

William P. Graham et al. *v.* Zoning Hearing Board of Upper Allen Township and Clepper Farms, Inc. William P. Graham et al., Appellants.

Argued May 12, 1986, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Ronald M. Katzman, Goldberg, Katzman & Shipman, P.C.,* for appellants.

*Dusan Bratic,* for appellee, Hearing Board of Upper Allen Township.

*William E. Miller, Jr., Keefer, Wood, Allen & Rahal,* for appellee, Upper Allen Township.

*John M. Eakin,* with him, *Fred H. Hait, Eakin & Eakin,* for appellee, Clepper Farms, Inc.

OPINION BY JUDGE CRAIG, August 12, 1986:

William P. Graham and eight other landowners (Graham Group) appeal from an order of the Court of Common Pleas of Cumberland County affirming a decision of the Zoning Hearing Board of Upper Allen Township which conditionally approved Clepper Farms, Inc.'s preliminary subdivision plan. We affirm.

On March 14, 1980, Clepper Farms submitted a preliminary subdivision plan to Upper Allen Township, and on May 19, 1980, the Township Planning Commission recommended that the plan, subject to certain conditions, be approved by the Board of Commissioners of Upper Allen Township. The board of commissioners on June 11, 1980 refused to approve the plan for the

reasons that were stated as conditions by the planning commission. On June 16, 1980, the board of commissioners notified Clepper Farms of the rejection and set forth the reasons for the rejection, but made no reference to the ordinance or statutory provisions violated by the plan.

Clepper Farms, on July 1, 1980, commenced a mandamus action in the Court of Common Pleas of Cumberland County seeking to compel approval of the plan because the board of commissioners failed to comply with the notice requirements of Section 508(2) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, art. V, *as amended,* 53 P.S. §10508(2) (MPC). Section 508(2) requires the board of commissioners to cite the provisions of the statute or ordinance it relied upon in disapproving a subdivision plan.

The court of common pleas ordered that the plan be deemed approved subject to the conditions which had been recommended to the board of commissioners by the planning commission. Both Clepper Farms and the board of commissioners appealed from that order to this court. In *Clepper Farms, Inc. v. Trimmer,* 66 Pa. Commonwealth Ct. 326, 443 A.2d 1385 (1982), this court affirmed the trial court's deemed approval of the plan, but reversed the trial court's order insofar as it had subjected the plan to conditions because those conditions had not been embodied in any township approval nor accepted by the developer.

At the same time that Clepper Farms had filed the mandamus action, it also had filed a precautionary appeal with the court of common pleas pursuant to section 1006(1) of the MPC, challenging the merits of the board of commissioners' rejection of the plan. On July 10, 1980, the Graham Group filed a precautionary appeal with the zoning hearing board pursuant to section 1007 of the MPC based on the theory that if Clepper Farms

were successful in its mandamus action, the Graham Group would then become "persons aggrieved" by the deemed approval. In addition, the Graham Group and the township filed a precautionary appeal with the court of common pleas. The court of common pleas quashed that appeal and remanded the matter to the zoning hearing board for a hearing on the merits. *Upper Allen Township v. Zoning Hearing Board of Upper Allen Township*, 33 Cumb. 76 (C.P. Pa. 1982), *aff'd*, 77 Pa. Commonwealth Ct. 582, 466 A.2d 292 (1983).

After several hearings, the zoning hearing board found that the plan failed to comply with the ordinance requirements in ten respects, but nevertheless gave conditional approval to the plan by subjecting it to ten so-called "conditions" which spelled out how the plan should be revised to achieve compliance.[1] Clepper Farms appealed from that order to the court of common pleas which, after a hearing, the court affirmed. This appeal followed.

------

[1] The following table is a summary of the zoning hearing board's findings concerning the preliminary subdivision plan's noncompliance with the zoning ordinance, matched up to the board's conditions bringing the plan into conformity with the zoning ordinance:

| Findings | Conditions | |
|---|---|---|
| 3A | 1 | (Projection of Brunswick Avenue to the plan's eastern boundary) |
| 3B | 9 and 10 | (Correction of flood plain elevation) |
| 3C | 9 and 10 | (Statement negating flood plain construction) |
| 3D | 6, 7 and 8 | (Designation of open space) |
| 3E | 6, 7 and 8 | (Designation of open space) |
| 3F(1) | 3 | (Elimination of retention basin from flood plain) |
| 3F(2) | 3 | (Elimination of retention basin breast from flood plain) |
| 3F(3) | 2 | (Redesign of retention basin capacity) |
| 3F(4) | 4 | (Negation of residential use as to four lots) |
| 3G | 5 | (Fire hydrant provision) |

The Graham Group raises five issues, as follows:

1. Whether the zoning hearing board had the authority to issue a conditional approval of the preliminary subdivision plan?

2. Whether the zoning hearing board erred in approving the preliminary subdivision plan because no special exception for development in the flood plain had been obtained?

3. Whether the zoning hearing board failed to make essential findings of fact and give sufficient reasons for its conclusions regarding the size of the retention basin?

4. Whether the zoning hearing board abused its discretion in requiring that the retention basin be 5.02 acre feet as a condition of approval?

5. Whether the trial court erred in failing to compel adequate open space to be placed in the interior of the subdivision?

## Conditional Approval of Preliminary Subdivision Plan

Although conditions attached to developmental approval normally embody additional requirements beyond those specified in ordinance provisions, the "conditions" here imposed by the zoning hearing board, as noted above, did not add new requirements, but only specified changes needed to achieve ordinance compliance.

The Graham Group contends, that because MPC section 1007, and MPC sections 909 and 915 mentioned within it, do not expressly authorize the zoning hearing board to attach conditions to its decision, the zoning hearing board is precluded from issuing a conditional approval, *i.e.*, if the proposal is not in full compliance as submitted, the Graham Group contends that the board must reject it. In addition, the Graham Group argues that those sections should be contrasted with sections

912 and 913 of the MPC, which expressly authorize the zoning hearing board to attach conditions to its approval of a variance or special exception.

The Graham Group appealed to the zoning hearing board pursuant to section 1007 of the MPC which reads as follows:

> *Persons aggrieved* by a use or development permitted on the land of another *who desire to secure review or correction of a decision* or order *of the governing body* or of any officer or agency of the municipality which has permitted the same, on the grounds that such decision or order is not authorized by or is contrary to the provisions of an ordinance or map *shall first submit their objections to the zoning hearing board under sections 909 and 915.* The submission shall be governed by provisions of section 1005.
>
> Appeals to court from the decision of the zoning hearing board may be taken by any party aggrieved. (Emphasis added.)

53 P.S. §11007.

Although the fourth sentence of section 508(4) of the MPC impliedly recognizes that the governing body may impose conditions on the approval of a preliminary or final subdivision plan, there is no similar language applicable to the zoning hearing board.

However, the purpose of a preliminary plan is essentially conditional in that the developer must fulfill all requirements before he can receive final approval of the plan. *Tuscarora Forests, Inc. v. Fermanagh Board of Supervisors*, 80 Pa. Commonwealth Ct. 104, 471 A.2d 137 (1984). Therefore, by the very nature of a preliminary subdivision plan, the zoning hearing board does not exceed its power by attaching conditions to its approval of a preliminary plan in order to bring the plan into conformity with the zoning ordinance. That is what the zoning hearing board did here.

Section 1007 authorizes appeals to the zoning hearing board to review *or correct* a decision of the governing body. The word "correction" is defined in Webster's Third New International Dictionary, 253 (1981) as, "1: the action or an instance of correcting: as a: amendment, rectification . . . c: a bringing into conformity with a standard . . . 3a: something substituted in place of what is wrong. . . ."

Because the zoning hearing board in this case has the authority to correct a decision of the board of commissioners, we hold that, in order to effectuate the intent of the legislature, the zoning hearing board's authority must encompass the power to approve subject to conditions which prescribe the path to conformity with the ordinance.[2] In the two-step subdivision approval plan process, final plan approval provides the logical occasion for establishing the fulfillment of the conditions.

### Approval of a Preliminary Subdivision Plan Without a Special Exception for Flood Plain Development

The Graham Group contends that section 637 of the Upper Allen Township Zoning Ordinance requires that a developer obtain a special exception for flood plain development before it can obtain approval of its preliminary subdivision plan. Section 637 of the Upper Allen Township Zoning Ordinance provides:

Uses by Special Exception. In addition, the following uses may be permitted in the Flood Plain Conservation District as a special excep-

---

[2] The board of commissioners cited *Fifty-Fourth Street Center, Inc. v. Zoning Board of Adjustment,* 395 Pa. 338, 150 A.2d 335 (1959), for the proposition that the zoning hearing board had the authority to attach conditions to its approval of the preliminary subdivision plan. However, that case provides no assistance because it involved a zoning board of adjustment certificate, which, under the Philadelphia Code, is the same as a special exception.

tion upon authority of the Zoning Hearing Board and after review by the Planning Commission.

1. Dams, culverts and bridges approved by the Commonwealth of Pennsylvania Department of Environmental Resources.

However, neither the zoning ordinance nor the subdivision regulations specify when a developer must obtain a special exception in relation to the preliminary approval process, and we will not read into the ordinances a requirement that a developer must obtain a special exception before approval of its preliminary plan. Accordingly, the zoning hearing board did not err in not requiring the special exception for development in the flood plain before its approval of the preliminary subdivision plan, and correctly made the obtaining of the special exception a condition of final approval.

## Essential Findings of Fact and Sufficient Reasons For the Size of the Retention Basin

Concerning the size of the retention basin, the zoning hearing board's findings and conclusions stated:

The area designated to serve as the retention basin has been inadequately sized and does not meet the requirements of Section 412(3) and 412(4)(d) of the Subdivision Ordinance in that the retention basin was not designed to handle the anticipated storm water run off occurring in the drainage basin as a result of a 100 year flood.

Redesign the retention basin to provide 5.02 acre feet of capacity (Section 412(3) and 412(4)(d) of the Subdivision Ordinance). The retention basin shall be designed by a Registered Professional Engineer and approved by the Township Engineer (Section 504(1) of the Subdivision Ordinance).

Section 908(9) of the MPC provides:

The board . . . shall render a written decision. . . . Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefore. Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found. . . .

53 P.S. §10908(9).

Clearly, the factual content of the record and the board's ordinance references demonstrate the sufficiency of the findings and conclusions in relation to MPC section 908(9).

## Size of the Retention Basin

The Graham Group contends that the zoning hearing board abused its discretion in requiring that the retention basin be 5.02 acre feet because the zoning hearing board failed to base its determination upon Soil Conservation Service data.

Three engineers testified before the zoning hearing board regarding the proper size of the retention basin. The township engineer, Mr. Sullivan, testified that the retention basin capacity should be 3.5 to 4.2 acre feet. The Graham Group engineer, Mr. Peffer, stated that the size of the retention basin should be 7.5 acre feet. Clepper Farm's engineer, Mr. Williams, calculated the size of the retention basin as 5.02 acre feet.

The township zoning ordinance does not specify on what type of evidence the zoning hearing board must rely in determining the size of a retention basin. The zoning hearing board as factfinder has the power to accept or reject the testimony of expert witnesses, in

whole or in part, and we will not disturb its findings, except for an abuse of discretion. *Hersh v. Zoning Hearing Board of Marlborough Township,* 90 Pa. Commonwealth Ct. 15, 493 A.2d 807 (1985). After a thorough review of the record, we conclude that the zoning hearing board did not abuse its discretion in refusing to rely upon the Soil Conservation Service data in determining the size of the retention basin.

### Adequate Open Space to be Placed in the Interior of the Subdivision

The Graham Group contends that the zoning hearing board erred in failing to require Clepper Farms to have a minimum of three acres of open land to be located "in the interior of the proposed subdivision." The record reveals that the open space is located adjacent to Stumpstown Road to the east, Monroe Township to the west, Brandy Lane Kennels to the north, and other land in the subdivision to the south. Section 511(4) of the Upper Allen Township Zoning Ordinance provides:

> . . . . *As a general rule,* the open space in Subdivisions or Land Development which border land which is already subdivided or developed shall be located along the border of such land or lands; open space in Subdivisions or Land Developments which do not border on land which is already subdivided or developed shall be located in the interior of the proposed Subdivision or Land Development. . . . (Emphasis added.)

That provision expressly applies only "[a]s a general rule." The court of common pleas correctly ruled that, according to the rules of grammar and according to common and approved usage, 1 Pa. C. S. §1903(a), section 511(4) is not mandatory as to the relative location of the required open space.

Further, the trial court did not err in finding that Clepper Farms had complied with section 511(4) on the ground that the subdivision "bordered" land which was already developed. Although a roadway constituted the "border" between the planned area and adjacent land, its existence did not negate the concept of "bordering" in the sense of adjacency; because the ordinance did not define "bordering" as "immediately abutting" or having any other specific connotation, the trial court was entitled to interpret "bordering" in a general sense.

## Conclusion

Accordingly, we affirm the decision of the Court of Common Pleas of Cumberland County.

### ORDER

NOW, August 12, 1986, the order of the Court of Common Pleas of Cumberland County, dated May 31, 1985, is affirmed.