**CACO THREE, INC., Appellant,**

v.

**BOARD OF SUPERVISORS OF HUNTINGTON TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2003.

Decided March 29, 2004.

---

Ronald M. Lucas, Harrisburg, for appellant.

Robert E. Campbell, Gettysburg, for appellee.

BEFORE: FRIEDMAN, J., and LEAVITT, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

CACO Three, Inc. (CACO) appeals from an order of the Court of Common Pleas of Adams County that affirmed the decision of the Board of Supervisors of Huntington Township (Board) disapproving a revised preliminary land development plan. We reverse and remand.

The following relevant facts are undisputed. CACO is the owner and developer of a 235–acre tract of land (subject property) located in Huntington Township (Township), Adams County between State Route 94 and State Route 1020. In early 1999, CACO submitted a preliminary land development plan, proposing to develop a 275–unit mobile home park, to be known as "Peakview Mobile Home Park," on the subject property. CACO revised the preliminary plan on May 10, 1999.

Upon CACO's requests, the ninety-day period under Section 508 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508, within which the Board must act on the preliminary plan, was subsequently extended to September 30, 2000 to allow CACO to supplement the plan. When CACO submitted the revised preliminary plan in May 1999, the Township had not enacted a zoning ordinance regulating the use of the subject property. The Township subsequently enacted a zoning ordinance, to be effective November 11, 1999, designating the subject property as an agricultural conservation zoning district where the proposed use is prohibited. On June 22, 2000, CACO again revised the preliminary plan.

■ At its regularly scheduled meeting on September 14, 2000, the Board disapproved the revised preliminary plan. In a subsequently issued written decision, the Board set forth nine reasons for the disapproval. On appeal, the trial court denied CACO's motion to present additional evidence, rejected two of the nine reasons relied on by the Board, and affirmed the Board's decision to disapprove the revised preliminary plan. CACO's appeal to this Court followed.[1]

■ A preliminary plan must be approved if it meets all specific, objective requirements under a subdivision and land development ordinance. *Herr v. Lancaster County Planning Commission,* 155 Pa. Cmwlth. 379, 625 A.2d 164 (1993), *appeal denied,* 538 Pa. 677, 649 A.2d 677 (1994). The preliminary plan is essentially condi-

---

1. This Court's scope of review in a land use appeal, where, as here, the trial court did not take additional evidence, is limited to determining whether the governing body committed an error of law or abused its discretion. *Ruf v. Buckingham Township,* 765 A.2d 1166 (Pa.Cmwlth.2001). The governing body abuses its discretion when its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

tional in nature in that after its approval, the developer must still fulfill all the requirements to obtain final approval. *Graham v. Zoning Hearing Board of Upper Allen Township*, 99 Pa.Cmwlth. 585, 514 A.2d 236 (1986), *appeal granted*, 515 Pa. 596, 528 A.2d 604 (1987); *Tuscarora Forests, Inc. v. Fermanagh Board of Supervisors*, 80 Pa.Cmwlth. 104, 471 A.2d 137 (1984). Consequently, even where the preliminary plan fails to comply with the objective, substantive requirements, the governing body may in its discretion either reject the plan outright or grant conditional approval. *Schultheis v. Board of Supervisors of Upper Bern Township*, 727 A.2d 145 (Pa.Cmwlth.1999).

◼ Further, the preliminary plan containing minor defects correctable by amendment must be approved subject to a condition that necessary corrections be made. *Shelbourne Square Assoc. v. Board of Supervisors of Township of Exeter*, 794 A.2d 946 (Pa.Cmwlth.2002), *appeal denied*, 572 Pa. 727, 814 A.2d 679 (2002). When the preliminary plan is disapproved, the governing body must "specify the defects found in the plan and describe the requirements which have not been met and . . . cite to the provisions of the statute or ordinance relied upon." Section 508(2) of the MPC.

CACO contends that none of the following reasons relied on by the Board and upheld by the trial court supports the decision to disapprove the preliminary plan.[2]

*Inconsistence with the Comprehensive Plan.*

◼ In Paragraph 7 of its decision, the Board first relied on inconsistency of the preliminary plan with the comprehensive plan:

> The proposed development is inconsistent with the comprehensive plan for Adams County as adopted by Huntington Township. Very low density is proposed for this and surrounding areas. There is a preserved farm directly to the North and West of the proposed development and an agricultural security to the South. A development as proposed would have undesirable impacts on the surrounding area. This is in violation of Section 402A and 402B.

Section 402.A and B of the Huntington Township Subdivision and Land Development Ordinance (Ordinance) provides:

> The following requirements and guiding principles for subdivisions and land development shall be observed with respect to factors affecting the suitability of the site for such development.
>
> A. The plans shall conform to the municipal comprehensive plan and official map, the zoning ordinance and zoning map, or to such parts thereof. . . .
>
> B. A land development or subdivision must be coordinated with existing land development or subdivision in the neighborhood so the entire area may be developed harmoniously.

2. CACO also contends that the trial court abused its discretion in denying its motion to present additional evidence consisting of its engineer's letters sent to the Township Planning Commission on August 25, 2000 and September 8, 2000 discussing the sewer and water systems, seeking approval of the preliminary plan subject to a condition of obtaining required permits, and responding to the Township engineer's comments; and a revised preliminary plan submitted to the Township engineer on September 13, 2000, a day before the Board's September 14, 2000 decision. Because we reverse the order of the trial court and remand to the Board for the purpose of approving the preliminary plan subject to conditions, it is unnecessary to address CACO's challenge to the denial of the motion.

Although a comprehensive plan is a useful tool for properly guiding growth and development of the community, it is only intermediate and inconclusive steps in the land use planning. *Swinehart v. Upper Pottsgrove Township,* 23 Pa.Cmwlth. 282, 351 A.2d 702 (1976); *Saenger v. Planning Commission of Berks County,* 9 Pa. Cmwlth. 499, 308 A.2d 175 (1973). Unlike a specific and regulatory zoning ordinance, a comprehensive plan is, by its nature, an abstract recommendation as to desirable approaches to land utilization and development of the community. *Michaels Development Co. v. Benzinger Township Board of Supervisors,* 50 Pa.Cmwlth. 281, 413 A.2d 743 (1980).

Consequently, any inconsistence with the comprehensive plan, standing alone, cannot justify disapproving the land development plan. *Appeal of Molnar,* 64 Pa.Cmwlth. 578, 441 A.2d 487 (1982). *See also* Section 303(c) of the MPC, 53 P.S. § 10303(c) ("[n]otwithstanding any other provision of this act, no action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such action is inconsistent with, or fails to comply with, the provision of a comprehensive plan"). Further, a preliminary plan cannot be rejected on the basis of amorphous criteria, such as noncompliance with the "purpose" of the ordinance or inconsistence with the "harmonious development." ROBERT S. RYAN, 2 PENNSYLVANIA ZONING LAW and PRACTICE § 11.2.8.

### *The Quarry Partially Located on the Subject Property.*

The Board also relied on the existence of the abandoned, water-filled quarry partly located on the western portion of the subject property. The Board stated in Paragraph 2 of its decision:

A most striking and severe problem with this development is the fact that the land with the large concentration of development and small children that might reside thereon is subject to life threatening hazards and may be considered uninhabitable unless those hazards have been removed. The premesis [sic] is situated adjacent to a quarry and the plans do not provide for the complete fencing of the quarry and the proposals as submitted are inadequate in violation Section 402.F. This is not a surprise to the developers, it has been stated for months and possibly a year that the fencing of the quarry must be completed.

Section 402.F of the Ordinance provides:

§ 402. **GENERAL SITE STANDARDS.**

The following requirements and guiding principles for subdivisions and land development shall be observed with respect to factors affecting the suitability of the site for such development.

. . . .

F. Land subject to hazards of life, health or property as may arise from fire, floods, disease, excessive noise, odor, falling aircraft, or considered uninhabitable for other reasons may not be developed unless the hazards have been removed or the plans show adequate safeguards against them.

In the revised preliminary plan, CACO proposed to install a six-foot cyclone fence on the subject property along the quarry and extending to the property line to address the Township's concern over the safety. The Township insisted, however, that a fence must be installed on the entire perimeter of the quarry, including the area occupied by the adjacent properties. In a letter dated August 10, 2000, CACO advised the Township Planning Commission that it had been unable to obtain the adja-

cent property owners' permission to install a fence on their properties.

Section 503–A of the MPC, 53 P.S. § 10503–A, provides that "[n]o municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or payment of any offsite improvements or capital expenditures of any nature whatsoever . . . except as may be specifically authorized under this act." The Board fails to cite any provision of the MPC supporting its authority to require CACO to install a fence on the adjacent properties without the owners' permission.

■ Further, it is well established that a preliminary plan may not be denied based on general, non-specific standards, such as the potential danger to the health, safety and welfare. *Scluffer v. Plymouth Township,* 32 Pa.Cmwlth. 394, 379 A.2d 1060 (1977); *Harrisburg Fore Assoc. v. Board of Supervisors of Lower Paxton Township,* 21 Pa.Cmwlth. 137, 344 A.2d 277 (1975). Thus in *Goodman v. Board of Commissioners of the Township of South Whitehall,* 49 Pa.Cmwlth. 35, 411 A.2d 838, 842 (1980), this Court reversed the governing body's decision to disapprove the preliminary plan under the subdivision ordinance, which provided that "[l]and subject to hazardous conditions such as *open quarry,* unconsolidated fill, flood, precipices, and water supply . . . shall not be subdivided until the hazards have been eliminated." (Emphasis added.) Similarly, the Board in this matter erred in disapproving the preliminary plan relying on the general site standards set forth in Section 402.F of the Ordinance.

*Noncompliance with the Sanitary Sewer System Requirements.*

■ The Board next stated in Paragraphs 3 and 8 of its decision:

3. There are insufficient details on the plan showing minimum compliance with the sanitary sewer system set forth under Section 807.

8. The developers have not complied with Section 506 and Section 807 dealing with the stormwater management and design criteria.[3] Sufficient design details and calculations of the sewage collection and disposal system have not been submitted to confirm compliance with this section and approval by the DEP for a Part II permit has not been issued or obtained.

Section 807 of the Ordinance requires that a mobile home park sewage system be connected to a public system, whenever feasible, and that if a connection to a public system is not feasible, the proposed sewage disposal facilities be approved by the Department of Environmental Protection (DEP) prior to construction. Section 807 of the Ordinance then sets forth design standards for a sewage system. CACO submitted its engineer's report regarding the feasibility of sewer connection to the public system. CACO also submitted the plan for the proposed sewer and wastewater collection system and obtained a Part I NPDES Permit from the DEP for the proposed system.

In stating that the plan submitted by CACO did not contain sufficient details for the sewer system, the Board failed to list specific standards which CACO failed to meet, in violation of Section 508(2) of the MPC. Further, it is more reasonable and consistent with the mandate of Section

---

**3.** Sections 506 and 807 regulate sanitary sewage systems, not storm water management and design criteria as stated by the Board.

508(2) of the MPC to condition final approval of the development plan upon obtaining all the required permits from the DEP, rather than rejecting the plan outright. *Stein v. Easttown Township Board of Supervisors*, 110 Pa.Cmwlth. 293, 532 A.2d 906 (1987); *Harrisburg Fore*. Therefore, the reasons set forth in Paragraphs 3 and 8 of the Board's decision do not justify the disapproval of the preliminary plan.

### *Noncompliance with the Storm Water Management and Design Criteria.*

■ The Board further stated in Paragraph 5 of its decision that the submitted plan was inadequate to meet the storm water management and design criteria set forth in Sections 304.3.G and 507 of the Ordinance.

Section 304.3.G provides that "[t]he completeness of the stormwater plan shall be required by the Township Engineer, the Planning Commission or the Board of Supervisors in accordance with this Chapter." Under Section 507.2.C, the storm water management plan must contain, *inter alia*, (1) topographic features of the site and adjacent lands considered to impact on the storm water management design and (2) flow direction arrows to indicate the direction of storm water flow.

The Board stated that the submitted storm water management plan was inadequate because it failed to (1) label the proposed grading and contours; (2) include details and design calculations of ponds to be used as a temporary sediment traps; (3) label inlets; (4) indicate discharge from the R–9 area to the sediment trap # 5; and (5) meet the required release rates. However, such failure to include labels, notations and design calculations in the preliminary plan is not objective defects that will justify outright disapproval of the preliminary plan; rath-

er, it is minor technical defects that can be corrected by amending the plan. *Shelbourne Square*. In addition, the Board did not comply with Section 508(2) of the MPC by failing to specify the release rates that CACO must meet. The Board should have made the correction of the technical defects a condition for final approval.

### *Noncompliance with the Potable Water Supply System Requirements.*

■ In Paragraph 6 of its decision, the Board stated that CACO failed to submit "[s]ufficient design details and calculations of a potable water supply system" and to obtain the DEP permits for the system. The Board also noted that the ground water recharge estimated by CACO's geologist would be insufficient to serve the proposed 275 mobile home units.

In his report dated July 21, 2000, CACO's geologist estimated that the ground water available at the site would be 250 gallons per day per mobile home and would support 224 units. 806.2.A of the Ordinance provides that "[t]he water supply shall be capable of supplying the minimum of 150 gallons per day per mobile home." When the estimated ground water supply of 250 gallons per day per unit is calculated based on the required minimum amount of 150 gallons, it would be sufficient to support 373 units, more than the proposed 275 units.

Further, failure to provide design details and documents related to the water supply capacity is not critical in the preliminary plan approval stage. *Shelbourne Square; Goodman*. CACO filed applications with the DEP and other authorities seeking approval for the proposed private water supply system. The Board should have approved the preliminary plan subject to a condition that CACO must obtain the re-

quired permits for final approval. *Stein; Harrisburg Fore.*

### Lack of Highway Occupancy Permits.

█ Finally, the Board relied on CACO's failure to include highway occupancy permits or tentative approval from the Department of Transportation (DOT) for the proposed access to the state highways. In support, the Board cited Section 304.2.P of the Ordinance which provides that "[i]f the subdivision proposes a new street intersection with a State route, the intersection occupancy permit number(s) shall be indicated for all such intersections."

As discussed earlier, outright disapproval of the preliminary plan based on lack of required permits is improper. *Stein; Harrisburg Fore.* The Board should have approved the preliminary plan on the condition that the required occupancy permits be obtained from the DOT for final approval of the plan.

The trial court stated, however, without citing any supporting authority that if the DOT ultimately requires CACO to place access to the state highways at locations different from those proposed in the preliminary plan, CACO would have to modify the preliminary plan, and that such modification would then have a significant "ripple effect" on the overall development plan and cause the Township to incur additional expenses in reviewing modified plans. Trial Court's Opinion, p. 8.

Following its approval, the preliminary development plan must still meet all the requirements under the subdivision and land development ordinance for final approval and is therefore subject to possible modifications. *Graham; Tuscarora Forests.* Further, the Township is authorized to collect fees for reviewing the development plans. Section 503(1) of the MPC, 53 P.S. § 10503(1). Hence, neither the mere possibility of future modification of the plan nor the consideration of the financial burden on the Township may justify disapproval of the preliminary plan.[4]

Since none of the reasons relied on by the Board justifies the outright disapproval of the preliminary plan, we reverse the order of the trial court and remand this matter to the Board with instruction that it approve the revised preliminary plan submitted by CACO on June 22, 2000, subject to a condition that the plan must comply with *all* the requirements under the Ordinance for final approval.

### ORDER

AND NOW, this 29th day of March, 2004, the order of the Court of Common Pleas of Adams County in the above-captioned matter is reversed. This matter is remanded to the Board of Supervisors of Huntington Township with instruction that it approve the revised preliminary plan submitted by CACO Three, Inc. on June 22, 2000, subject to a condition that the plan must comply with all the requirements under the Huntington Township

---

4. The Board contends that the trial court erred in rejecting one of the reasons set forth in Paragraph 1 of its decision, i.e., CACO's failure to obtain approval of the erosion and sedimentation control plan from the Adams County Conservation District. However, Section 304.3.B of the Ordinance relied on by the Board does not set forth such requirement. It only requires that the preliminary plan be accompanied by the supplementary data of "[a] plan for the control of erosion and sedimentation for review by the County Conservation District Office as required by the Pennsylvania Clean Streams Act." Hence, the trial court properly concluded that CACO was not required to obtain the Conservation District's approval of the erosion and sedimentation control plan for approval of the preliminary plan.

Subdivision and Land Development Ordinance for final approval.

Jurisdiction relinquished.