16 A.3d 1209 (2011)
Jerome JOSEPH and North Whitehall for Sustainable Development, Appellants
v.
NORTH WHITEHALL TOWNSHIP BOARD OF SUPERVISORS, North Whitehall Township and Wal-Mart Stores East, L.P.
No. 770 C.D. 2010.
Commonwealth Court of Pennsylvania.
Argued: December 6, 2010.
Decided March 11, 2011.
*1212 Thomas H. Dinkelacker, Orefield, for appellants.
Lisa A. Young, Schnecksville, for appellees North Whitehall Township Board of Supervisors and North Whitehall Township.
Eric J. Schock, Center Valley, for appellee Wal-Mart Stores East, L.P.
BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.
OPINION BY President Judge LEADBETTER.
Jerome Joseph and North Whitehall for Sustainable Development, a citizens' group, (collectively, Objectors), appeal from the order of the Court of Common Pleas of Lehigh County that affirmed the decision of the Board of Supervisors of North Whitehall Township (Board) granting the application of Wal-Mart Stores East, L.P. (Wal-Mart) seeking conditional use approval for a planned commercial development.
The Objectors argue that the Board placed the incorrect burden of proof in granting the conditional use application. The Objectors also challenge the Board's finding that the proposed planned commercial development would not result in or substantially add to a significant traffic hazard or traffic congestion. The Objectors further argue that the Board improperly refused to issue a subpoena to compel the Township's traffic engineer to testify at a hearing and that the Board and its solicitor should have recused themselves from the case because the Township intervened in the Objectors' appeal from the Board's decision as a party through the same solicitor who presided at the Board's hearing. Wal-Mart questions whether its proposed development was authorized by the Board's grant of conditional use approval to the former property owner in 2001.

I.
In 2006, Wal-Mart acquired from Western Lehigh Valley Corporation the subject property consisting of approximately 40 acres of vacant, undeveloped land located on the west side of State Route (SR) 309 in North Whitehall Township (Township), Lehigh County. The subject property is within a PC Planned Commercial Option zoning district, except the 1.7-acre portion *1213 which is located within the AR Agricultural-Rural Residential zoning district. Section 308.C of the Township Zoning Ordinance (Zoning Ordinance) permits a "planned commercial development"[1] in the PC zoning district as a conditional use. The stated purposes of the PC zoning district are:
To provide the same uses as are permitted in the VR [Village Residential] district. In addition, to offer a variety of non-residential development with carefully planned and coordinated traffic circulation as an option to the applicant if the applicant proves that the road system will be able to efficiently and safely support the development and that there will be suitable access to reach an arterial street. If an applicant is not able to comply with the traffic access and other requirements as provided in Section 308, then the applicant shall still have opportunities for reasonable variety of residential uses of his/her land under the VR district.
Section 301.D.10 of the Zoning Ordinance (emphasis in original).
In February 2008, Wal-Mart filed an application for conditional use approval for a planned commercial development of the subject property and submitted a site plan showing a layout of the project, landscaping, parking, lighting, signs, sidewalks, grading, a stormwater management and a water supply. Wal-Mart stated that the anticipated uses in the proposed planned commercial development were "retail and commercial in nature and of the type permitted in the PC District" and that "[b]y way of example, one use currently considered [was] a Wal-Mart Supercenter" with a building coverage of 177,700 square feet, or 17% of the total area of the subject property.[2] Reproduced Record (R.R.) at 597a. Wal-Mart alternatively sought the Board's determination that the proposed development was authorized by the Board's 2001 grant of conditional use approval to the former owner for a planned commercial development with "214,600 square feet of various retail uses and 20,000 square feet of general office use." R.R. 627a.
An applicant for conditional use approval for a planned commercial development must comply with the specific standards set forth in Section 308.D through I of the Zoning Ordinance, such as a minimum tract and lot area, access requirements and landscaping. In addition, the applicant is required to meet the following criteria for a conditional use set forth in Section 118.C:
1. Any specific standards for the proposed use listed in Sections 402 or 403 [additional requirements for specific principal and accessory uses];
2. Other applicable sections of this Ordinance;
3. The Subdivision and Land Development Ordinance, as applicable, except that engineering details regarding compliance with such Ordinance may be addressed as part of a subsequent approval under such Ordinance; and
4. Comply with all of the standards listed in Section 119.C.3 [approval of special exception uses].
*1214 Section 119.C.3 requires a special exception applicant to prove, inter alia:
b. Traffic. The applicant shall show that the use will not result in or substantially add to a significant traffic hazard or significant traffic congestion.
c. Safety. The applicant shall show that the use will not create a significant public safety hazard, including fire, toxic or explosive hazards.
d. Storm Water Management. Will follow adequate, professionally accepted engineering methods to manage storm water.
....
g. Performance Standards. The applicant shall show that the use will not have a serious threat of inability to comply with the performance standards of this Ordinance, as stated in Article V [environmental protection].
The Township Planning Commission recommended approval of Wal-Mart's application. The Board thereafter held hearings, at which Wal-Mart presented the testimony of its project manager, Harold H. Newton, Jr. who is a registered professional engineer and land surveyor. The Objectors presented the testimony of their traffic expert, Douglas Plank, and numerous exhibits. After the hearings, the Board approved Wal-Mart's application subject to four conditions, concluding that Wal-Mart met all of the requirements in Sections 117 (site plan submission requirements), 118, 119 and 308 of the Zoning Ordinance. The Board required Wal-Mart to post security to ensure traffic improvements, to obtain land development approval for each lot to be subdivided, to submit a landscaping plan, and to prove before issuance of a building permit that the use will not create a significant public safety hazard.
The Objectors appealed the Board's decision to the trial court, and Wal-Mart intervened in the appeal. The Township also intervened through the same solicitor who had presided at the Board's hearing. The trial court rejected the Objectors' argument that Wal-Mart was required to show its compliance with the specific criteria set forth in Sections 402 and 403 of the Zoning Ordinance for anticipated uses in the proposed planned commercial development. The court further concluded that Wal-Mart was not required to submit a traffic impact study and name a public sewage provider at the conditional use approval stage and that the testimony of Wal-Mart's project manager supported the Board's finding that the proposed use will not result in or substantially add to a significant traffic hazard or traffic congestion. The court remanded for the Board's consideration of (1) the Objector's argument that a small area of the subject property located within the AR zoning district was not included in the site plan and (2) Wal-Mart's argument that the Board's 2001 conditional use approval remained valid. The court affirmed the Board's decision in all other respects.
After a remand hearing, the Board determined that Wal-Mart had corrected a drafting error in the site plan by including the vacant 1.7-acre portion of the subject property within the AR zoning district in the approved final subdivision plan and that the small area was excluded from the Board's conditional use approval. The Board further concluded that the 2001 grant of a conditional use did not authorize the planned commercial development proposed by Wal-Mart in 2008, noting that the 2008 application differed from the 2001 application in its nature and scope. The trial court subsequently affirmed the Board's remand decision. The Objectors' *1215 appeal to this Court followed.[3]

II.
A conditional use is defined as "[a] use permitted in a particular zoning district pursuant to the provisions in Article VI" of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§ 10601-10621. Section 107(a) of the MPC, 53 P.S. § 10107(a). A governing body has authority to grant a conditional use pursuant to express standards and criteria. Section 603(c)(2) of the MPC, 53 P.S. § 10603(c)(2), and Section 913.2(a) of the MPC, added by Section 93 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.2(a). A conditional use proceeding concerns only a proposed use of land, not particular design details of the proposed development. In re Thompson, 896 A.2d 659 (Pa.Cmwlth.2006). Because a conditional use is equivalent to a special exception that a zoning hearing board has authority to grant, the standards and burden of proof applicable to a special exception also apply to a conditional use. In re Cutler Group, Inc., 880 A.2d 39 (Pa. Cmwlth.2005).
An applicant for conditional use approval has the burden of establishing compliance with the specific, objective criteria of the zoning ordinance. In re Thompson. Once that burden is satisfied, the applicant has made out a prima facie case and must be granted a conditional use, unless the objectors present sufficient evidence that the proposed use will have a detrimental effect on the public health, safety and welfare. Id. The fact that a certain use is permitted as a conditional use evidences a legislative determination that such use would not have an adverse impact on the public interests in normal circumstances. K. Hovnanian Pa. Acquisitions, LLC v. Newtown Twp. Bd. of Supervisors, 954 A.2d 718 (Pa.Cmwlth.2008). The zoning ordinance may place the burden of persuasion as to the general detrimental effect of the proposed use on the health, safety and welfare upon the applicant but may not shift the duty to present evidence of such detrimental effect to the applicant. Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd., 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991); Bray v. Zoning Bd. of Adjustment, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980).

III.
The Objectors first argue that the Board misinterpreted the relevant provisions of the Zoning Ordinance by failing to require Wal-Mart to identify individual uses to be established in the proposed planned commercial development and to present evidence of compliance with the specific standards for such uses. Wal-Mart counters that specific uses to be located in the planned commercial development are reviewed by the Board in separate proceedings.
At the outset, we note that the zoning authority's interpretation of its own ordinance is entitled to great deference and weight. Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp., 987 A.2d 1243 (Pa.Cmwlth.2009), appeal denied, ___ Pa. ___, 4 A.3d 1056 (2010). Section 308.G of the Zoning Ordinance *1216 provides that "[t]he applicant shall present whatever information is available on the types of tenants or uses that are intended or expected in different portions of the development." (Emphasis added.) In the application, Wal-Mart listed retail and commercial uses as the anticipated uses in the proposed planned commercial development and stated that it was considering locating a Wal-Mart Supercenter in the development. The information provided by Wal-Mart complied with the plain language of Section 308.G.
To support their argument that Wal-Mart was required to reveal the specific uses to be located in the proposed development and show compliance with the requirements for such uses, the Objectors rely on Elizabethtown/Mt. Joy Associates v. Mount Joy Township Zoning Hearing Board, 934 A.2d 759 (Pa.Cmwlth.2007). In that case, the Court upheld the zoning hearing board's denial of the special exception application for a shopping center, concluding that a concept plan or a mere promise to comply with the more stringent requirements set forth in the zoning ordinance was insufficient to grant a special exception. As the Court further stated, however, "what an applicant must demonstrate... is determined on a case-by-case basis and will vary among municipalities based upon the use requested and the language in the ordinance." Id. at 764 (emphasis added).
Unlike in Elizabethtown/Mt. Joy Associates, the use proposed in this conditional use proceeding was a planned commercial development, not specific uses that might be located in the proposed development after the Board's conditional use approval, which is only one of many procedural steps for reviewing a planned commercial development project. Section 308.B of the Zoning Ordinance provides that conditional use approval for a planned commercial development "is intended to occur over the same time period or an overlapping time period as review and approval of a preliminary subdivision or preliminary land development plan." Section 308.C.2 further provides:
[A]s an option, the same non-residential uses that are permitted by right, by special exception or by conditional use shall also be permitted in the PC district in the same manner and with the same regulations as would apply within the C [Commercial] district, only if all such uses are within a "Planned Commercial Development" approved as a conditional use. (For example, once a Planned Commercial Development is approved, then an applicant could receive approval for an individual retail store by right on one lot and a tavern as a conditional use on another lot, if so provided by Section 306 [table of permitted uses by district]). [Emphasis added.]
Under the multi-tier procedural scheme contemplated by the Zoning Ordinance for reviewing a planned commercial development project, the only relevant consideration in this conditional use approval proceeding is whether Wal-Mart met the criteria for a planned commercial development, not the individual uses to be established in the development after conditional use approval.[4]

*1217 IV.
The Objectors next challenge the following conclusions of the Board:
25. Ordinance Section 119.C.3.b has been met through the Applicant's testimony, accepted by the Board, that the use will not result in or substantially add to a significant traffic hazard or significant traffic congestion.
26. Ordinance Section 119.C.3.b is satisfied through the Applicant's proposal, with substantially less than full build-out and coverage of uses permitted, that the traffic produced is what would be expected for a planned commercial development.
....
46. The subject Application shows an impact that is not greater than that which might be expected in normal circumstances.
Board's August 15, 2008 Decision, Conclusions of Law Nos. 25, 26 and 46; R.R. at 11 a-12a and 15a. The Objectors argue that the testimony of Wal-Mart's project manager was speculative, contradictory and incompetent to support the Board's conclusions.
An anticipated traffic increase resulting from a proposed use would not on its own defeat a conditional use request. In re Brickstone Realty Corp., 789 A.2d 333 (Pa.Cmwlth.2001). Evidence that other permitted uses may generate as much or more traffic as the proposed use is also relevant in reviewing a conditional use request. Id. In addition, the mere fact that a proposed use would contribute to projected traffic congestion primarily generated by other sources is not a sufficient basis for denying a conditional use. Orthodox Minyan of Elkins Park v. Cheltenham Twp. Zoning Hearing Bd., 123 Pa.Cmwlth. 29, 552 A.2d 772 (1989). To deny a request for a conditional use, "[t]here must be a high probability that the proposed use will generate traffic patterns not normally generated by [the proposed] type of use and that this abnormal traffic will pose a substantial threat to the health and safety of the community." Id. at 774.
The subject property is located along SR 309, an already congested highway. See Traffic Impact Study performed by Lehigh Engineering Associates, Inc. on January 10, 2001 (Objectors' Exhibit No. 4); R.R. 608a-666a. Wal-Mart's project manager testified that the former owner had made numerous improvements to SR 309 and the area roadways and that Wal-Mart was also making further road improvements for the proposed development. See Notes of Testimony (N.T.) at 55; R.R. at 98a. He further testified:
Q. And if I understand you correctly, actually, on the 40-acre Planned Commercial Development, you could have nearly four times as much other floor space, is that correct?
A. About three and a half times.
Q. Thank you. Will this Planned Commercial Development result in a significant traffic hazard?
A. No, it will not.
Q. And will the Planned Commercial Development substantially add to a significant traffic hazard?
A. No, it will not.
....
Q. And is there a combination of things that you need to look at in order to determine whether or not it adds to congestion and traffic, that is, just not *1218 the number of trips but also the improvements that will be made there?
A. There's a very detailed procedure that we'll go through in the land development phase.
Q. And it's based upon those two things, also, the improvements and the road widening, etc., that you form your opinion that it will not result in a significant hazard or add to a significant traffic hazard, is that correct?
A. That's correct.
Q. In fact, ... even though this Planned Commercial Development will, in fact, create traffic, as we all know, you indicated that the upgrading for that intersection would improve it?
A. It would improve with the combination of the improvements that are being proposed at that intersection despite the turning movements.
N.T. at 258 and 260; R.R. at 301a and 303a.
The Board accepted the testimony of Wal-Mart's project manager and rejected the conflicting testimony of the Objectors' traffic expert. In a land use proceeding, the board is the ultimate fact-finder and the exclusive arbiter of credibility and evidentiary weight. Nettleton v. Zoning Bd. of Adjustment of the City of Pittsburgh, 574 Pa. 45, 828 A.2d 1033 (2003). The fact that Wal-Mart's project manager performed only a one-day traffic count at the intersection near the subject property goes to the credibility of his testimony, not to its competency. Moreover, the fact-finder does not capriciously disregard competent evidence by choosing to accept one witness' testimony over another witness' testimony. Snyder v. R.R. Borough, 59 Pa.Cmwlth. 385, 430 A.2d 339 (1981). The testimony of Wal-Mart's project manager, accepted by the Board, supports the Board's findings that the proposed planned commercial development will not result in or substantially add to a significant traffic hazard or traffic congestion and that the traffic generated by the development and its impact are not greater than what might be expected in normal circumstances of such use.

V.
The Objectors next argue that the Board improperly refused to issue a subpoena to the Township's traffic engineer, Louise M. Lamb, to testify at the hearing in this proceeding. They maintain that her testimony was relevant to the credibility of the testimony of the Township's project manager and the traffic impact resulting from the proposed development. At the hearing, the Objectors presented Lamb's letter, dated October 17, 2007, sent to the Board after reviewing Wal-Mart's preliminary land development plan. In the letter, she stated: "In consideration of the possible intent by Wal-Mart to close their existing facility in Whitehall, it can be expected that customers from that facility might gravitate toward the proposed location on S.R. 309. It is recommended that Wal-Mart provide a market analysis for the purpose of trip distribution." R.R. at 732a (emphasis added). Wal-Mart's project manager denied that he was aware of Wal-Mart's plan to close the Whitehall store.
Administrative agencies are not bound by the technical rules of evidence, and all relevant evidence may be admitted. Section 908(6) of the MPC, 53 P.S. § 10908(6); D.Z. v. Bethlehem Area Sch. Dist., 2 A.3d 712 (Pa.Cmwlth.2010). However, "irrelevant, immaterial, or unduly repetitious evidence may be excluded." Section 908(6) of the MPC. Evidence is relevant if it logically tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable *1219 interference or presumption regarding the existence of a material fact. Commonwealth v. Laich, 566 Pa. 19, 777 A.2d 1057 (2001). The administrative agencies have broad discretion to admit or exclude evidence; consequently, the exclusion of evidence alone may not constitute a procedural error. D.Z.
The Objectors had an ample opportunity to cross-examine Wal-Mart's project manager regarding the traffic impact of the proposed planned commercial development. His testimony accepted by the Board as credible was sufficient to support the Board's finding that the proposed use will not create or substantially add to a significant traffic hazard or significant traffic congestion. It must be also emphasized that the preliminary land development plan reviewed by Lamb is conditional in nature because after its approval, Wal-Mart must still comply with all of the requirements to obtain final land development plan approval. CACO Three, Inc. v. Bd. of Supervisors of Huntington Twp., 845 A.2d 991 (Pa.Cmwlth.2004). Wal-Mart could address any concerns raised by the Township's traffic engineer before the Board's final plan approval. Hence, the Board did not abuse its discretion in rejecting the Objectors' attempt to discredit the testimony of Wal-Mart's project manager relying on Lamb's speculative and irrelevant statement made in the preliminary land development proceeding.

VI.
The Objectors' argument that Wal-Mart failed to comply with the wastewater treatment requirements in Sections 117.A.7 and 119.C.3.g of the Zoning Ordinance is likewise without merit. Sections 117.A.7 requires an applicant to provide a "[n]ote stating general proposed method of providing wastewater treatment and water supply (such as `On-Lot well and On-Lot Septic Services')." Under Section 119.C.3.g, the applicant must "show that the use will not have a serious threat of inability to comply with the performance standards of this Ordinance, as stated in Article V." Article V, Section 507.A provides that "[a]ll methods of wastewater disposal shall meet requirements of the State, any applicable Township Authority and the Official Township Sewage Facilities Plan, as amended, as applicable."
Wal-Mart complied with Section 117.A.7 by indicating in the application that it would use a public sewer system and by including a note in the site plan stating that public sewer facilities would be utilized. The Objectors' claim that Wal-Mart intended to utilize a private sewer system is not supported by the record. In a letter, dated August 16, 2007, sent to the chairperson of the Board, the Lehigh County Authority stated that it was in the process of developing a regional sewer system and that it was "willing to provide sewer service" to the proposed development under certain conditions, such as approval by the Pennsylvania Department of Environmental Protection. R.R. at 606a. The Authority further stated that if the Wal-Mart facility is ready for occupation "prior to the new sewer treatment plant being ready to serve, the parties have arranged for a temporary alternate treatment solution," such as a temporary sewage holding tanks. Id. at 607a. The Objectors fail to explain how the mere arrangement of temporary, contingent sewer treatment options in the event of unavailability of a public sewer system indicates Wal-Mart's intention to utilize a private sewer system. Because Wal-Mart proposed to utilize a public sewer system, not a private on-lot sewer system, Section 507.A of the Zoning Ordinance requiring compliance *1220 with the environmental standards of the state and local agencies is inapplicable.

VII.
Finally, the Objectors argue that the Board and the solicitor should have recused themselves from the case because the Township's intervention in the Objectors' appeal from the Board's decision through the same solicitor who had presided at the Board's hearings resulted in a conflict of interest. The Objectors ask the Court to remand this matter to the Board for a new hearing before an independent hearing officer and for a new decision.
A fair trial before a fair tribunal is a basic and fundamental due process requirement. Horn v. Twp. of Hilltown, 461 Pa. 745, 337 A.2d 858 (1975). When a governing body acts in an adjudicatory capacity, it must avoid not only actual bias but also an appearance of bias or impropriety. K. Hovnanian Pa. Acquisitions. Section 913.2(a) of the MPC authorizes the governing body to "appoint any member or an independent attorney as a hearing officer" to hold a hearing on a conditional use application. Section 913.2(a), however, only permits and does not mandate an appointment of a hearing officer. K. Hovnanian Pa. Acquisitions. Further, Section 913.2(a) provides that "[t]he decision or, where no decision is called for, the findings shall be made by the board." Therefore, "[e]ven if a hearing is to be conducted by a hearing officer, the ultimate decision on a conditional use application is to be made by the governing body." K. Hovnanian Pa. Acquisitions, 954 A.2d at 724.
In Horn, the Pennsylvania Supreme Court held that the procedure in which the same solicitor represented the zoning hearing board and the township opposing the variance application was susceptible to prejudice and must be prohibited. As this Court has held, however:
While an appearance of non-objectivity is sufficient to trigger judicial scrutiny, the significant remedy of invalidation often depends on something more tangible. "Before it can be said that a judge [or supervisor] should have recused himself the record must demonstrate bias, prejudice, capricious disbelief or prejudgment.... If a judge [or supervisor] thinks he is capable of hearing a case fairly his decision not to withdraw will ordinarily be upheld on appeal."
Caln Nether Co. v. Bd. of Supervisors of Thornbury Twp., 840 A.2d 484, 496 (Pa. Cmwlth.2004) [quoting Appeal of Miller & Son Paving, Inc., 161 Pa.Cmwlth. 138, 636 A.2d 274, 278 (1993)].
The Township, through the solicitor, intervened in the Objectors' appeal to the trial court on October 14, 2008, pursuant to Section 1004-A of the MPC, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11004-A, which permits municipalities to intervene in a land use appeal as of course. The trial court thereafter remanded only on two issues: (1) a drafting error in the site plan and (2) Wal-Mart's right to develop the subject property under the 2001 conditional use approval. The Objectors never questioned the propriety of the Board proceeding before the Board's remand hearing. Moreover, the Objectors prevailed on the remanded issues. Wal-Mart corrected the drafting error in the final subdivision plan, and the Board rejected Wal-Mart's contention that the proposed development was authorized by the 2001 conditional use approval. The record thus demonstrates that the Objectors were not prejudiced in any way by the Township's intervention through the same solicitor who presided at the Board's hearing, and it does not reveal *1221 any other facts which might justify invalidation of the Board proceeding.
Accordingly, the trial court's order affirming the Board's decision is affirmed.[5]

ORDER
AND NOW, this 11th day of March, 2011, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is AFFIRMED.
NOTES
[1] The term "planned commercial development" is defined as "a land development and/or subdivision that includes principal non-residential uses in the PC district, which is approved as a conditional use by the Board of Supervisors and which meets all of the applicable requirements of this Section 308." Section 308.B of the Zoning Ordinance.
[2] A "[r]etail store (greater than 5,000 sq. feet)" is permitted by right in the PC zoning district. Sections 306.B and 308.C.2 of the Zoning Ordinance. The maximum building coverage in the PC zoning district is 40% of the total property area. Section 307.B.2.
[3] Where, as here, the trial court did not take additional evidence, this Court's review is limited to determining whether the board of supervisors committed an error of law or manifest abuse of discretion. Weiser v. Latimore Twp., 960 A.2d 924 (Pa.Cmwlth.2008). The board abuses its discretion if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Valley View Civic Ass'n v. Zoning Bd. of Adjustment, 501 Pa. 550, 462 A.2d 637 (1983).
[4] Wal-Mart separately filed preliminary subdivision and land development applications, proposing to subdivide the subject property into five lots and to develop two fast food restaurants, a drive-in bank, a high turnover (sit-down) restaurant and a 176,846-square-foot free-standing discount superstore. R.R. at 671a. The Board subsequently approved the preliminary subdivision plan, and the trial court affirmed. In a memorandum opinion and order, this Court upheld the Board's approval of the preliminary subdivision plan. See Joseph v. North Whitehall Twp. Bd. of Supervisors, 994 A.2d 1205 (Pa.Cmwlth., No. 1661 C.D.2009, filed May 21, 2010). According to Wal-Mart, the Board has also approved the land development plan.
[5] Due to our decision to uphold the Board's approval of Wal-Mart's 2008 conditional use application, Wal-Mart's alternative argument that the proposed development is authorized by the Board's 2001 unappealed conditional use approval is moot. A case is moot where, as here, a determination is sought on a matter which cannot have any practical effect on the existing controversy. Chruby v. Dep't of Corr., 4 A.3d 764 (Pa.Cmwlth.2010). Hence, it is unnecessary to address Wal-Mart's alternative argument.