# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hummelstown Swim Club, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 141 C.D. 2016 |
| | : | Argued: March 6, 2017 |
| Borough of Hummelstown | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: May 16, 2017**

## I. Introduction

In this land use case, the Hummelstown Swim Club (Club) appeals from an order of the Court of Common Pleas of Dauphin County (trial court) that affirmed a decision of the Hummelstown Borough Council (Council) denying the Club's application for approval of a Preliminary/Final Land Development Plan (Plan) to construct a banquet facility and other improvements on the Club's property located on Kokomo Avenue in the Borough.

Recently, the Club acquired Tax Parcel No. 31-011-009 (Parcel 9), which is located adjacent to a parcel on which the Club currently maintains outdoor swimming pool and recreational facilities, identified as Tax Parcel No. 31-011-008 (Parcel 8). To reach the banquet facility from Kokomo Avenue, the Plan indicates a need for a 60-foot extension of Kokomo Avenue from the end of the paved road to Parcel 9 on a tract of land the Club asserts is owned by the Borough. The Club also intends to construct a cul-de-sac turnaround partially on an alleged

Borough easement over Parcel 8 (Easement Area) and partially on the proposed Kokomo Avenue extension. The Borough denies ownership of either the Easement Area or the undeveloped extension of Kokomo Avenue to Parcel 9, which was never paved or opened.

On appeal here, the Club contends Council erred in denying the Plan because it did not include the entire tracts of both Parcels 8 and 9 where the Plan only proposes construction of public *road improvements* to an existing public street and the Easement Area, and does not propose any non-residential buildings or similar improvements on Parcel 8. The Club further asserts Council abused its discretion and erred as a matter of law in denying the Plan where none of the remaining reasons for denial can legally support a Plan denial, and where the Plan complies with the applicable standards of the Borough's Subdivision and Land Development Ordinance (SALDO). See Reproduced Record (R.R.) at 357a-45a. In addition, the Club argues Council acted in bad faith during its review of the Plan by failing to provide guidance on the application of conflicting requirements of the SALDO, and by allowing Council President to participate in the decision on the Plan despite his clear appearance of bias. For the reasons that follow, we affirm.

## II. Background
### A. Generally

The Club, founded in 1952, is a nonprofit organization with over 1,500 members. The Club currently maintains swimming pools, recreational and social facilities on Parcel 8. In 2005, the Club purchased Parcel 9, which is an adjacent property. The Club bought Parcel 9, a 1.9-acre developable lot, with the

2

intent to construct a 7,140 square-foot multi-purpose building on it. The Club ultimately decided to build a banquet facility, which provides room for the Club's administrative office, a multi-purpose events room, a catering kitchen, a children's room and rest rooms. The banquet facility will be capable of hosting small parties and showers, thereby entitling members to use the facilities all year.

The banquet facility would have a maximum capacity of 199 people, but the Club intended to cap actual capacity at 170. Further, the Club expects most events to be limited to 15-20 people.

Notably, Parcel 9 is in an R-SF (Residential–Single Family) District. However, Section 603(1) of the Borough's Zoning Ordinance permits the Borough's Zoning Hearing Board (Zoning Board) to grant a special exception for clubhouses, lodges and fraternal organizations in the R-SF District. Section 1401(8) of the Ordinance regulated the use of such facilities to nonprofit uses.

## B. Hummelstown I.

In 2011, the Club applied for a special exception, which the Zoning Board initially approved, subject to 13 conditions. The Club appealed to the trial court, challenging 12 of the 13 conditions as not necessary under the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101-11202. The Borough cross appealed. It sought reversal of the Zoning Board's determination that the Club's proposed banquet facility constituted a club, lodge or fraternal organization under the Ordinance. See Borough of Hummelstown v. Borough of Hummelstown Zoning Hearing Bd. and

3

Hummelstown Swim Club/Hummelstown Swim Club v. Borough of Hummelstown Zoning Hearing Bd. (Pa. Cmwlth., Nos. 2067-68 C.D. 2012, filed August 1, 2013) (Hummelstown I) (unreported).

In Hummelstown I, the trial court, speaking through the Honorable Scott A. Evans, issued two orders. The court affirmed the Board's decision to grant the special exception. In addition, the trial court struck all 13 conditions imposed by the Zoning Board. In so doing, the trial court reasoned that the challenged conditions were not necessary to implement the purposes of the MPC. Both the Borough and the Club appealed.

On appeal, this Court noted Section 912.1 of the MPC[1] provides that a zoning board, in granting a special exception, may attach such reasonable conditions and safeguards, in addition to those expressed in the zoning ordinance, as it may deem necessary to implement the MPC and the zoning ordinance. 53 P.S. §10912.1. However, the zoning board is not required to support the imposition of its conditions. Rather, the applicant is required to show the impositions constituted an abuse of discretion.

The Hummelstown I Majority ultimately reinstated the following conditions (with emphasis added):

> 4. There shall be no more than 165 people at any event or gathering at the banquet facility.

---

[1] Added by the Act of December 21 1988, P.L. 1329.

4

5. There shall be no sign or advertising promoting the banquet facility, other than a sign identifying the facility as the Hummelstown Swim Club. …

\* \* \* \*

7. The banquet facility shall have a minimum of 89 parking spaces, all located on the Subject Property.

\* \* \* \*

9. Only a member of the [Club] shall be able to host an event or gathering at the banquet facility ….

\* \* \* \*

11. The Subject Property shall have fifteen (15) foot buffers with screen plantings and a front yard setback in accordance with Alternate Zoning Exhibit Plat ….

12. The [Club] shall construct a turnaround to the specifications of the [Borough] at the end of Kokomo Avenue.

13. The banquet facility shall comply with all applicable provisions of the Zoning Ordinance and the [SALDO].

See Hummelstown I, Slip. Op., at 6 n.3.

### C. Submission of Plan; Borough Reviews

In July 2014, the Club submitted its present proposed Plan, which shows the banquet facility on Parcel 9. See R.R. at 3a-214a. As noted above, the proposed cul-de-sac turnaround improvements required by Zoning Board Condition No. 12 will be located partially within the Kokomo Avenue right-of-way and partially in the Easement Area on Parcel 8.

5

In response to reviews from Matthew S. Bonanno, P.E., of the engineering firm, Herbert, Rowland and Grubic (Borough Engineer), the Club twice submitted revisions regarding the cul-de-sac turnaround. The Club's principal Plan continued to propose an 80-foot diameter turnaround cartway. Ultimately, the Club submitted an Alternative Plan Sheet proposing a 100-foot diameter turnaround cartway with curbing, which the Club asserted was consistent with SALDO standards. With its submission of alternative turnaround proposals, the Club asked which diameter specifications would be applied to the turnaround and which design the Borough preferred.

In addition, the Borough observed, among other things, that the width of Kokomo Avenue's existing cartway from the swim lot to the proposed turnaround was only 18 to 18.5 feet. The minimum cartway for a cul-de-sac street without curbs is 24 feet. See Borough Review #3 at 2; R.R. at 276a; SALDO §502(3)(A); R.R. at 398a, 400a. The narrow cartway, the Borough explained, posed a problem for emergency vehicles on a long, dead-end street. Also, parking is currently permitted on both sides of Kokomo Avenue. A 24-26 foot-wide paved cartway is most appropriate where parking is permitted on only one side of the street. Borough Review #3 at 3; R.R. at 277a.

In response, the Club asserted Kokomo Avenue is adequate to serve the amount of traffic proposed for the banquet facility and to provide for adequate emergency access. R.R. at 293a-94a. The Club argued it should not have to make offsite improvements to roads that the Borough maintained at their current width for decades. R.R. at 294a.

6

On November 3, 2014, the Borough Engineer issued a fourth review (Borough Review #4). By letter dated November 26, 2014, the Council issued a written decision granting the Club's requested waiver for the preliminary plan. Nonetheless, Council denied the Plan for the following reasons set forth in Borough Review #4, which Council incorporated into its decision.

### D. Council's Denial of Plan
### 1. Entire Tract Boundary

Council first noted the Plan does not show the entire tract boundary for the Club property, including both Parcels 8 and 9. The tract boundary issue was raised in all four of Borough Engineer's reviews. Council noted the Club presented sworn testimony before the Zoning Board that it intended to create a single integrated facility on both Parcels 8 and 9. See Council Dec., 11/26/14, at ¶1 (page 2).

The Plan sets forth the tract boundary for Parcel 9, but does not show the entire tract boundary of Parcel 8, where the existing swimming facilities are located. To that end, the Club repeatedly responded to Borough Engineer's reports by stating Parcel 8 was not a part of the land development application.

Council also noted that an existing fence and shed on Parcel 8 were located within the Easement Area. The Plan also shows the Easement Area on Parcel 8 as being developed for the extension of Kokomo Avenue. Council further noted it does not consider the Easement Area to be owned by the Borough or part

7

of its street system. Council reasoned that in order to meet the design standards in SALDO Section 502.3A (street widths) for Kokomo Avenue, the Club must use portions of Parcel 8 for expansion of the street, while asserting at the same time that Parcel 8 is not part of the development. In other words, the Club cannot say there is no development on Parcel 8 when it is using part of Parcel 8 to make improvements to Kokomo Avenue. Council Dec. at ¶1 (page 3).

In addition, because the banquet facility would essentially cover all of the permitted 40% lot coverage for non-residential uses (39.9% out of 40%), if any portion of the required cul-de-sac turnaround would be constructed on Parcel 9, the maximum allowable lot coverage would be exceeded. Thus, Council determined the Club cannot claim Parcel 8 is not an integral part of the Plan and then locate improvements on it. Id.

The term "land development" in Section 107(a) of the MPC and SALDO Section 301 is defined as the "*improvement* of one (1) lot or two (2) or more contiguous lots for any purpose involving … a single non-residential building on a lot or lots …." R.R. at 370a. SALDO Section 301 defines "*improvement*" as including "any man-made immovable item which becomes part of, placed upon, or is affixed to, real estate." Id. Essentially, Council determined these street improvements on Parcel 8 require that the entire tract boundary of the Club's property, including all of Parcels 8 and 9, be included in the Plan. Council Dec. at ¶1 (page 3).

8

Moreover, assuming Parcel 8 is not part of the Plan, Council reasoned the Club cannot propose to subdivide Parcel 8 to provide improvements for the banquet facility without recording a subdivision plan in violation of the SALDO.

## 2. Extension of Kokomo Avenue

Council next determined the Plan does not comply with SALDO Section 601 (improvements required), which states: "The applicant shall provide all improvements required by these regulations …." R.R. at 415a. In particular, the Club failed to demonstrate it has the right or ability to extend Kokomo Avenue from its existing terminus approximately 60 feet to Parcel 9 where the banquet facility would be located. Council noted that only the paved portion of Kokomo Avenue is a public street and that any rights the Borough had to the unimproved 60-foot extension were extinguished years ago by Section 1724(b) of the Borough Code, 8 Pa. C.S. §1724(b). Council Dec. at ¶2.

Further, the Club failed to establish it is the landowner of all land necessary for the extension of Kokomo Avenue. In particular, the Club failed to show Roland M. Baynard, owner of Tax Parcel No. 31-011-10 (Parcel 10) abutting the north side of Kokomo Avenue, consented to the extension of Kokomo Avenue. Id.

## 3. Cul-de Sac Turnaround Requirements

Council next determined the Plan does not comply with the SALDO's requirements for a cul-de-sac turnaround. SALDO Section 502.3.A requires a right-of-way diameter of 100 feet. The applicable Plan Sheets do not show the

9

required 100-foot diameter for the right-of-way located entirely with the Kokomo Avenue extension and Easement Area. As such, even assuming the Borough owned the Kokomo Avenue extension and Easement area, it would need to obtain an additional right-of-way or easement, which the Club did not dedicate in the Plan.

Further, although the Club submitted alternatives for the cul-de-sac turnaround, Council noted it is not the responsibility of the Borough to design a land development plan, obtain the necessary rights-of-way, or determine which alternative plan a developer should use. Council Dec. at ¶3.

### 4. Kokomo Widening Right-of-Way, Curbing, Sidewalks

Council also determined the Plan does not comply with the street width requirements in SALDO Sections 501, 502.3.A, 601, 606, and 607 for the dedication of a right-of-way on Parcel 8 for Kokomo Avenue for cartway widening, and the installation of curbing and sidewalks in accord with SALDO requirements. Council Dec. at ¶4.

### 5. Adequate Street Access

Council further determined the Plan does not comply with the requirements in SALDO Section 405.2.I because it does not demonstrate the Club can provide adequate street access between Country Lane and the proposed banquet facility. Council Dec. at ¶5. In particular, this concerns the fire hazards associated with the narrow cartway on Kokomo Avenue. SALDO Section 405.2.I affords the Borough discretion to require that a land development applicant provide

a report indicating the estimated volume of traffic and the adequacy of the proposed and existing streets to carry the traffic, along with possible solutions to any identified problems. Id. Council noted the safety issue was raised by the Borough Engineer in all four reviews. Id.

## 6. Conditions of Zoning Board Decision

Council next determined the Plan does not comply with Conditions 12 and 13 of the Zoning Board decision, which this Court affirmed. Those conditions relate to the construction of the Kokomo Avenue cul-de-sac turnaround. As discussed above, Council determined in Paragraphs 2 and 3 of its decision that the Plan failed to meet the Borough's SALDO's radius and diameter requirements for the cul-de-sac turnaround, especially given the Borough's position that it does not own either the unpaved extension of Kokomo Avenue or the Easement Area. See Council Dec. at ¶¶2,3,6.

## 7. Maximum Length of Cul-de-Sac (Dead End) Streets

Council further determined the Plan does not comply with SALDO Section 502.4D relating to the maximum length of a cul-de-sac street. Section 502.4D provides that cul-de-sac streets serving commercial uses shall be adequate for the type of use served and shall not exceed 800 feet in length. Section 502.4C provides a similar 800-foot limit for residential streets, with a limit of 24 dwellings. The proposed extension would lengthen Kokomo Avenue to more than 1,500 feet in length. Council Dec. at ¶7.

**8. Fire Hydrant**

Council also observed the Plan does not comply with SALDO Sections 601 and 608 requiring the installation of a fire hydrant. Section 608 requires that where, as here, a public water supply is provided, that fire hydrants be installed within 600 feet of all existing and proposed structures. The Plan indicated that the Club would not install the hydrant, but that United Water would install a hydrant within 600 feet of the banquet facility at the Borough's request. Council noted it is not the Borough's responsibility to contact utility service providers on behalf of a subdivision or land development applicant. Council Dec. at ¶8.

**9. Deeds or Offers of Dedication**

In this reason for denial, Council noted the Plan does not comply with SALDO Section 407.1A(6), which requires that a final plat include statements by the applicant dedicating streets, rights-of-way or any sites for public use. As discussed more fully below, Council determined the Borough does not own the land for either the 60-foot extension of Kokomo Avenue or the Easement Area where the cul-de-sac turnaround would be located. SALDO Section 502.1.H prohibits proposed private streets. Here, the Plan did not include any formal offer of dedication on the suggested form in the SALDO for dedication of land for public use. The Club's mere statement that it will consider a right-of-way over Parcel 8 as a condition of Plan approval is not a sufficient indication of compliance. Council Dec. at ¶9.

In addition, Council noted that the Plan did not address the issue of whether the owner of Parcel 10 abutting the north side of Kokomo Avenue, consented to the extension of Kokomo Avenue. Such consent is required under Section 1724(b) of the Borough Code, 8 Pa. C.S. §1724(b). Council Dec. at ¶9.

**E. Trial Court's Denial of Appeal**

The Club appealed to the trial court. After conference with counsel, the trial court accepted briefs, without taking additional evidence.

Essentially, the Club argued that each of Council's reasons for denying the Plan lacked an adequate legal or factual foundation. When taken together, the Club asserted, Council's reasons for denying the Plan established that Council acted in bad faith. In response, Council argued that the Club failed to meet its burden of demonstrating that it was entitled to approval of the Plan.

Initially, the trial court, speaking through the Honorable Bruce F. Bratton, noted that the standard of review in a land use appeal, where the trial court received no additional evidence, is limited to a determination of whether the governing body abused its discretion, erred as a matter of law or made findings unsupported by substantial evidence. Trojnacki v. Bd. of Supervisors of Solesbury Twp., 842 A.2d 503 (Pa. Cmwlth. 2004). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. Valley View Civic Ass'n v. Zoning Bd. of Adjustment. 462 A.2d 637 (Pa. 1983). "Where a subdivision plan complies with all objective provisions of the applicable subdivision ordinance, as well as all other applicable regulations, the plan must be

approved.  The rejection of a plan may stand, however, if validly supported by even one of several objections."  <u>Robal Assocs., Inc. v. Bd. of Supervisors of Charlestown Twp.</u>, 999 A.2d 630, 635 (Pa. Cmwlth. 2010).

In denying the Club's appeal, the trial court, citing Paragraphs 1, 4 and 9 of Council's decision denying the Plan, determined the Club was required to include both Parcels 8 and 9 in the Plan.  As the court observed, the Plan proposed construction of the banquet facility, parking spaces and stormwater facilities on Parcel 9.  However, the court noted, it is further undisputed that Parcel 9 and Parcel 8 are two separate legal parcels.  Although no new *building* is proposed to be constructed on Parcel 8, the Club is proposing to build a portion of the required Kokomo Avenue turnaround on Parcel 8.

Section 107(a) of the MPC defines "Land development" in pertinent part as any of the following activities (with emphasis added):

> (1) <u>The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving</u>:
>
> (i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, <u>or a single nonresidential building on a lot or lots</u> … or
>
> (ii) the division or allocation of land and space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.
>
> (2) A subdivision of land.

14

53 P.S. §10107(a).

As the trial court further noted, SALDO Section 301 defines the term "improvements" to include "any man-made, immovable item which becomes part of, placed upon, or is affixed to real estate." R.R. at 370a.

In short, because the Plan proposed the development of several improvements on Parcel 8, including the Kokomo Avenue turnaround, pavement widening, curbing and sidewalks, the trial court determined the Club was required to include both Parcels 8 and 9 in the Plan.

Having determined Council set forth valid reasons for its denial of the Plan, the trial court dismissed the Club's land use appeal and affirmed the Council's November 26, 2014 decision denying the Plan. The Club appeals.[2]

### III. Discussion
### A. Plan Approval Generally

Section 508(2) of the MPC provides that where the governing body denies an application for plan approval, it shall specify the defects in the application, describe the requirements that were not met, and in each case, cite the

---

[2] Where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013). An abuse of discretion occurs when the governing body's findings are not supported by substantial evidence. Gerryville Materials, Inc. v. Planning Comm'n of Lower Milford Twp., Lehigh Cnty., 74 A.3d 322 (Pa. Cmwlth. 2013).

15

provisions of the ordinance or statute relied upon. 53 P.S. §10508(2). However, if a land development plan meets all specific, objective requirements of the municipality's SALDO, it must be approved. CACO Three, Inc. v. Bd. of Supervisors of Huntington Twp., 845 A.2d 991 (Pa. Cmwlth. 2004).

Here, Council's decision sets forth nine separate grounds for denial of the Plan. The Club asserts that none of the specified grounds pertain to the land development proposed on Parcel 9. Rather, all reasons for denial relate to proposed improvements to Kokomo Avenue and other offsite *road improvements*. Therefore, the Club argues, the Board erred and abused its discretion in denying the Plan based on the proposed road improvements to Kokomo Avenue and the Easement Area on Parcel 8.

## B. Tract Boundaries

### 1. Argument

The Club first contends the Board erred in determining the Plan proposed a "land development" of the entire Parcel 8 property. Rather, the Plan only proposes construction of public *road improvements* to an existing public street and an adjacent existing easement area on Parcel 8 identified in the Plan.

### a. Land Development Defined

The Club first contends the Board erred in determining the Plan proposed "land development" of the Parcel 8 property. To that end, the Council claimed the Plan's proposal to make improvements to the existing Kokomo Avenue using the Easement Area on Parcel 8 is a land development of the entire

16

parcel.  Based on this erroneous conclusion, Council's Objection No. 1 states the Plan does not show the entire tract boundary of the property of the Club which is the subject of the Plan as required by SALDO Section 407.1(A)(2), which provides:

> 1. The following shall be submitted in application for review and approval of a final plat:
>   A. [The final plat … shall show the following]:
>
> * * * *
>
>   (2) Tract boundary lines, right-of-way lines of streets, easements, and other right-of-way and property lines of residential lots and parcels in unit … and other sites with accurate dimensions, bearings, or deflection angles and radii, arcs, and central angles of all curves.

R.R. at 392a.

### b. Road Improvements v. Land Development

The Club argues that the proposed public road improvements in the Plan do not constitute "land development," as defined by the MPC, of the entire Parcel 8 tract.  Section 502-A of the MPC[3] defines *road improvement* as: "the construction, enlargement or expansion or improvement of public highways, roads or streets." 53 P.S. §10502-A.  Here, the Club asserts there is no legal precedent to support the position that proposed public road improvements within an existing or proposed easement for public use constitute land development of the entire property.

---

[3] Added by the Act of December 19, 1990, P.L. 1343.

17

To the contrary, the Club maintains, Pennsylvania courts have made it clear that not every improvement of real property constitutes land development under Section 107(a) of the MPC. See, e.g., Up. Southampton Twp. v. Up. Southampton Twp. Zoning Hearing Bd., 934 A.2d 1162 (Pa. 2007) (holding that billboard was not land development); Borough of Moosic v. Zoning Hearing Bd. of Borough of Moosic, 11 A.3d 564 (Pa. Cmwlth. 2010) (holding that restaurant addition was not land development); and, Marshall Twp. Bd. of Supervisors v. Marshall Twp. Zoning Hearing Bd., 717 A.2d 1 (Pa. Cmwlth. 1988) (holding that cell tower and a driveway were not land development).

Here, the Club argues, the Plan does not propose any nonresidential buildings, or improvements associated with nonresidential buildings on Parcel 8. Rather, the Plan proposes improvements to Kokomo Avenue and the Easement Area. In other words, these are road improvements to be constructed within the Borough's right-of-way over Kokomo Avenue or the Easement Area; they are not improvements of Parcel 8.

As support for its position, the Club cites Morris v. South Coventry Township Board of Supervisors, 836 A.2d 1015 (Pa. Cmwlth. 2003). In Morris, the governing body approved a land development plan that approved a deceleration lane for an existing street within a proposed easement of additional right-of-way located on a neighboring property. Because no easement existed and the neighbor was not an applicant to the plan, an objector challenged the plan on the basis that the developer did not own all the property proposed for land development and therefore had no right to submit a plan.

18

However, this Court rejected this argument noting that the proposal to improve an existing road did not qualify as a *subdivision* of the adjoining property since the plan merely called for the improvement of an easement for right-of-way. The Club argues Morris implicitly holds that the plan in that case did not propose a land development of the entire neighboring property.

The Club also cites our recent decision in BR Associates v. Board of Commissioners of the Township of Upper St. Clair, 136 A.3d 548 (Pa. Cmwlth. 2016). In BR Associates, we upheld the approval of a plan proposing stormwater improvements within an easement on a neighboring property even though the titleholder of that property objected to the proposed easements. We determined the question of whether the developer had the right to use the easement on the neighboring property was not a proper consideration in a review of a land development plan. As such, the Club argues, this Court did not consider the proposed stormwater improvements within the easement to constitute land development of the entire adjoining property. In other words, if this Court in BR Associates followed Council's interpretation of land development in the present case, the developer in BR Associates would have had to submit a plan that included the entirety of the neighboring property.

Here, the Club continues, the road improvements to Kokomo Avenue were not proposed for a purpose involving a nonresidential building. Rather, the improvements were intended for *general public use*. They were not intended for the banquet facility.

19

The Club further argues Council's reasons for requiring the entire Parcel 8 tract in the Plan would yield absurd results if applied generally to land development plans. Any plan using an additional right-of-way from a neighboring property would, under Council's theory, include the entire neighboring property in the plan. Likewise, any municipal or state highway improvement projects requiring the acquisition of an additional right-of-way from neighboring landowners would require a land development plan for the entire neighboring properties. Clearly, the Club argues, the definition of land development in Section 107(a) of the MPC cannot be interpreted in such an expansive manner

### c. Plan Depicts Tract Boundaries of Land Development

The Club further contends the Plan complies with SALDO Section 407.1(A)(2) because it clearly depicts the tract boundaries of the area of Parcel 8 proposed for land development as well as the existing and future right-of-way boundaries of Kokomo Avenue. Because the Plan does not propose a "land development" of the entire Parcel 8 tract, the Club argues Council erred in denying the Plan for not showing the entire tract boundary of Parcels 8 and 9. As noted above, Section 407.1(A)(2) provides:

> 1. The following shall be submitted in application for review and approval of a final plat:
>
> A. [The final plat … shall show the following]:
>
> * * * *
>
> (2) Tract boundary lines, right-of-way lines of streets, easements, and other right-of-way and property lines of residential lots and parcels in unit … and other sites with

20

> accurate dimensions, bearings, or deflection angles and
> radii, arcs, and central angles of all curves.

R.R. at 392a. The Club maintains the Plan depicts all of the tract boundaries necessary to determine compliance with the specific objective requirements of the SALDO. It shows the street right-of-way lines, easements and other areas proposed for public use, including the boundaries of the Easement Area. Therefore, the Club argues, Council's reliance on SALDO Section 407.1(A)(2) to deny the constitutes legal error and an abuse of discretion.

### d. Subdivision Approval Not Needed

Finally, the Club contends the Plan does not propose a subdivision of Parcel 8 for road improvements to Kokomo Avenue as Council concludes in Objection #1. The Club maintains such a conclusion is directly contrary to the holding in Morris as discussed above. Simply put, the proposal to make road improvements to land adjacent to Parcel 8 and within the Easement Area of Parcel 8 does not require a subdivision of Parcel 8. See Valley Twp. v. City of Coatesville, 894 A.2d 885 (Pa. Cmwlth. 2006) (municipality's acquisition of property for public road in eminent domain proceeding did not require subdivision approval).

### 2. Analysis
### a. Generally

To begin, we note that a party seeking approval of a land development plan bears the burden of showing its entitlement to approval. Ball v. Montgomery Twp. Bd. of Supervisors., 598 A.2d 633 (Pa. Cmwlth. 1991). If a plan complies with all objective provisions of the applicable SALDO, as well as all other

21

regulations, the plan must be approved. Robal Assocs. However, a single reason, if legitimate, may support the denial of the Plan. Robal; Herr v. Lancaster Cnty. Planning Comm'n, 625 A.2d 164 (Pa. Cmwlth. 1993). We are also mindful of the deference courts should exercise when reviewing a governing body's interpretation of ordinances it enacts and applies. Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd., 986 A.2d 935 (Pa. Cmwlth. 2009).

Further, the local governing body is the ultimate fact-finder in a land use proceeding. Joseph v. N. Whitehall Twp. Bd. of Supervisors, 16 A.3d 1209 (Pa. Cmwlth. 2011). As fact-finder, the governing body is empowered to resolve any conflicts in the testimony. Herr. To that end, this Court may not substitute its interpretation for that of the fact-finder. Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp., 25 A.3d 1260 (Pa. Cmwlth. 2011).

### b. Road Improvements v. Land Development

The Club first contends the Plan seeks only to make off-site road improvements, which cannot be considered land development under the MPC or onsite improvements to Parcel 8. We disagree.

Section 502-A of the MPC defines "**Onsite improvements**" as:

> all improvements constructed on the applicant's property, or the improvements constructed on the property abutting the applicant's property necessary for the ingress and egress to the applicant's property, and required to be constructed by the applicant pursuant to any municipal ordinance, including, but not limited to, the municipal

22

building code, <u>subdivision and land development ordinance</u>, PRD regulations and zoning ordinance.

53 P.S. §10502-A (emphasis added). Conversely, the MPC defines "**Offsite improvements**" as: "those public capital improvements which are not onsite improvements and that serve the needs of more than one development." <u>Id.</u> Further, the MPC defines "**Road improvement**" as the construction, enlargement, expansion or improvement of <u>public highways, roads or streets</u>." <u>Id.</u> (emphasis by underline added).

It is clear that there is no existing useable street access to Parcel 9, where the bulk of the development is to occur. The street, Kokomo Avenue, dead-ends 60 feet from Parcel 9 (proposed Club banquet facility, administrative offices, and parking). In addition, in the area of Parcel 9, and along the front of Parcel 8 (the existing Club swimming facilities), Kokomo Avenue's cartway is too narrow and there are no sidewalks. This undersized condition creates problems at least for first responders who would need to access the proposed banquet facility and administrative offices in an emergency, according to information accepted by Council. In this sense, the proposed Club banquet facilities, administrative offices and parking exacerbate the existing access problems.

Therefore, we discern no abuse of discretion by Council in its underlying decision to treat the proposed development as involving *both* Parcels 8 (existing Club swimming facilities) and 9 (proposed Club banquet facilities, administrative offices and parking). This is especially true because part of Parcel 8 is to be used to close the 60-foot gap between the end of the current Kokomo Avenue, to create the turnaround approved in <u>Hummelstown I</u>, to provide better

23

emergency access to the Club banquet facilities and administrative offices, and because Parcel 8 will be used in conjunction with Parcel 9.

For these reasons, we discern no reversible error or abuse of discretion in Council's determinations that the Plan falls short of compliance with Section 407.1(A)(2) of the SALDO, which requires that a final plan show the tract boundary lines of the proposed development, along with the planned lines of streets, easements, and other rights-of-way in the proposed development. R.R. at 392a. As discussed above, the Plan proposes substantial land development on Parcel 8, but it does not include the entire tract boundaries of Parcel 8.

## C. Dedication of Kokomo Avenue Extended; Easement Area
### 1. Argument

The Club contends Council determined the Plan does not comply with SALDO Section 407.1A(6), which requires that a final plat clearly identify the property proposed to be dedicated to public use. However, before addressing these reasons for denial, the Club challenges Council's determination that the Plan proposes land development of the entire Parcel 8 tract.

The Club further contends Council erred in determining that its Plan must comply with SALDO Section 407.1(A)(6), which requires a statement by the owners dedicating streets, rights-of-way and any other sites for public uses which are to be dedicated to public use. First, there is no requirement in either Section 407.1(A)(6) (R.R. at 392a) or SALDO Exhibit No. 1 (R.R. at 443a) (sample certification and dedicatory blocks), that requires the Club to provide a deed of

dedication. Second, the Club offered to provide a deed in lieu of condemnation for the Easement Area, but the Borough rejected that offer. (See Proposed Deed at 230a-31a; Council rejection at 237a). Third, Council never provided a deed form it would accept. Fourth, the Plan clearly depicts the road improvements to the Kokomo Avenue turnaround as being designed and constructed for public use, and the Plan contains a signature block as required by SALDO Ex. No. 1.

The Club also agreed to provide appropriate certifications attesting that the Easement Area would be rededicated for public use. In addition, the Club submitted an alternate plan with additional turnaround improvements and a dedication of right-of-way. The Club argues that placing certification and obtaining signatures from neighboring owners are minor technical requirements, which, at most, could be made a condition of Plan approval.

To that end, the Club argues nothing in the SALDO or Section 1724(b) of the Borough Code, 8 Pa. C.S. §1724(b), requires that a developer obtain consents from neighboring land owners prior to approval of a land development plan. Section 1724(b) of the Borough Code requires that if a street has not been opened for 21 years, the consent of the owners of 51% of the property abutting the street is needed to open it. The Club asserts Section 1724(b) applies only to paper streets or roads that were never actually opened. Borough of Lehighton v. Katz, 462 A.2d 889 (Pa. Cmwlth. 1983); Heller v. Borough of S. Williamsport, 408 A.2d 1172 (Pa. Cmwlth. 1979). Here, Kokomo Avenue was opened.

25

The Club further asserts the Borough owns the unpaved extension of Kokomo Avenue by virtue of Borough Ordinance 84-5 and that Council's conclusion that the Borough lost its rights to the unopened portion of Kokomo Avenue is incorrect. The express language of Ordinance 84-5 opened the entire length of Kokomo Avenue as a public street in accordance with former Section 1721.1 of the prior version of the Borough Code[4] relating to the laying out or opening of streets. Also, because the Borough owns the bed of Kokomo Avenue, the Club improvements to the road do not require the consent of abutting landowners to make improvements to the road. See Heller; Appeal of Carradorini, 152 A.2d 789 (Pa. Super. 1959).

## 2. Analysis

We first focus on Council's determination that the Borough does not own the 60-foot unpaved extension of Kokomo Avenue to Parcel 9 or the Easement Area. Although the Borough accepted the dedication of Kokomo Avenue in 1985, it never paved the 60-foot extension to Parcel 9. Because 21 years passed since the dedication, and the Borough never developed or opened the extension to Parcel 9, Council determined that the Borough does not own the property needed for the 60-foot extension to Parcel 9. See Section 1724(b) of the Borough Code; Borough of Lehighton v. Katz; see also Lillo v. Moore, 704 A.2d 149 (Pa. Super. 1997) (dedicated street existing only on paper does not render the accepted area "public;" in order for a dedicated public street to be a "public

---

[4] Section 1721.1 of the Act of February 1, 1966, P.L. (1965) 1656, formerly 53 P.S. 46721.1, repealed and replaced by the Act of April 18, 2014, P.L. 432. Similar provisions are now found at 8 Pa. C.S. §1721.1.

26

thoroughfare," it must be opened by the municipality or used by the general public).

The adjudication of land title issues is usually beyond the jurisdiction of municipal bodies charged with interpreting and enforcing local land use ordinances; instead, title issues are properly adjudicated in trial courts. BR Associates; Kaufman v. Borough of Whitehall Zoning Hearing Bd., 711 A.2d 539 (Pa. Cmwlth. 1998). Nevertheless, the existence of these title issues militates against any conclusion that Council abused its discretion here. In other words, we discern no abuse of discretion in the determination that land title issues, and the concomitant need for dedication of land, be resolved prior to approval of the proposed development. These issues can be resolved in the trial court in an action for declaratory relief.

Consequently, given the continuing property dispute, we agree with Council that the Plan fails to comply with SALDO Section 407.1A(6) requirements that a final plat include statements by the applicant dedicating streets, rights-of-way or any sites for public use. As discussed above, Council could require that title issues be resolved before approval of the proposed development.

### D. Kokomo Avenue Width; Frontage Improvements
### 1. Argument

The Club also contends the Plan is not defective for failing to depict additional public improvements along Parcel 8's entire frontage on Kokomo Avenue. The Club notes Council's determination that the Plan fails to comply

with SALDO Sections 501, 502.3.A, 601, 606, and 607 by failing to provide for widening of the Kokomo Avenue cartway from 18.5 to 24 feet, and by failing to provide for the installation of curbing, sidewalks and additional street right-of-way along the frontage of Parcel 8 on Kokomo Avenue.

Nevertheless, the Club again responds, Parcel 8 is not proposed for land development. Therefore, the SALDO provisions cited by Council in Objection No. 4 do not support denial of the Plan. Moreover, these provisions do not contain any requirement that a developer make improvements to existing streets adjacent to its property. Citing Hummelstown I, the Club argues that decision established that Kokomo Avenue is adjacent to, and not a part of, Parcel 8.

The Club further asserts SALDO Section 501 merely requires that Council review and evaluate plans on the basis of SALDO design standards, which represent the minimum design standards. SALDO Section 502.3.A (minimum street right-of-way and cartway widths) simply contains design standards for existing streets, it does not specifically require a developer of an abutting property to bring existing streets into compliance with SALDO standards.

Further, Section 601 requires a developer to make improvements required by Chapter 6, including street construction. However, Section 601 does not require a developer to improve adjacent streets. Similarly, Sections 606 and 607 provide construction standards for curbs and sidewalks. However, the Club

28

argues, Sections 606 and 607 do not require either curbs or sidewalks on public streets, especially on an existing public street.

Therefore, any required improvements would be considered "offsite improvements" as defined by Section 502-A of the MPC, 53 P.S. §10502-A (those public capital improvements which are not onsite improvements and that serve the needs of more than one development).

## 2. Analysis

We agree with Council's determination that the Plan fails to comply with the SALDO standards for the cartway width, right-of-way width, and cul-de-sac turnaround diameter requirements for Kokomo Avenue as set forth in the Borough's SALDO. Section 501 provides in part (with emphasis added):

> 1. The following principles, standards, and requirements will be applied by the Borough Council and Planning Commission in their review of and evaluation of all subdivision and land development plat applications.
>
> 2. The standards and requirements contained herein shall be considered the minimum for the promotion of the public health, safety, convenience, and general welfare.

R.R. at 397a. In construing the requirements of its own SALDO, we defer to the Borough's interpretation of its own ordinances. Tink-Wig.

Section 502.3(A) pertains to street widths for cartways, right-of-ways and cul-de-sac turnaround widths set forth in Section 502 (Table 1). Here, the Plan does not propose to widen the cartway to the required 24-foot width for a cul-de-

sac street. The Plan does not show the dedication of an additional right-of-way on Parcel 8 along Kokomo Avenue for the widening of the cartway.

The Plan also fails to meet the requirements for a cul-de-sac turnaround with a 100-foot diameter right-of-way located within the Kokomo Avenue extension and Easement Area. As such, even assuming the Borough owned the Kokomo Avenue extension and Easement Area, an additional easement would be needed. Nothing in the Plan indicates the Club will dedicate the needed right-of-way or easement needed for the turnaround. See R.R. at 270a (Plan indicates "Additional right-of-way to be obtained by Hummelstown Borough").

Similarly, the Plan does not meet the requirements of Section 502.4(F)(1) for a 50-foot radius (100-foot diameter cartway) and a 60-foot radius (120-foot) diameter right-of-way for a fully-paved turnaround at the closed end of a cul-de-sac. R.R. at 401a. Again, a dedication of additional land is needed. Nothing in the Plan indicates the Club will dedicate the additional land needed for these improvements.

In short, the widening and 60-foot extension of Kokomo Avenue from the end of the paved street to Parcel 9 is necessary for ingress and egress to Parcel 9. As discussed above, these improvements must be considered *onsite improvements* under Section 502-A of the MPC. Similarly, as this Court recognized in Hummelstown I, the construction of the cul-de-sac turnaround located partially on the extension of Kokomo Avenue, partially on the Easement

Area, and partially on other property yet to be obtained by the Borough, must also be viewed as *onsite improvements*.

The Plan also fails to comply with the requirements in Sections 601, 606, and 607 for the installation of curbing and sidewalks in accord with SALDO standards. Contrary to the Club's contention that the Borough's SALDO does not require sidewalks and curbing, Section 601 provides "the applicant shall provide all improvements required by these regulations." R.R. at 415a (emphasis added). Section 606 requires concrete curbs in accordance with specifications in a Borough resolution on file in the Borough Office. R.R. at 421a. Section 607 requires concrete or brick sidewalks in accordance with specifications in a Borough resolution. Id. The Plan does not show the dedication of an additional right-of-way on Parcel 8 along Kokomo Avenue for the installation of curbing and sidewalks.

For these reasons, we see no error or abuse of discretion in the Council's determination that the Plan is defective for failing to meet SALDO requirements provide for public improvements required along Parcel 8's entire frontage on Kokomo Avenue, including widening of the street, installation of cul-de-sac turnaround, and installation of the necessary curbing and sidewalks.

**E. Additional Reasons for Denial of Plan**

The Club further contends Council abused its discretion and erred as a matter of law in denying the Plan where none of the remaining reasons for denial can legally support a Plan denial, and where the Plan complies with the applicable

31

standards of the Borough's SALDO. In light of our above discussion, a full discussion of the other substantive issues is not needed. Indeed, the trial court did not address these additional issues. However, for the sake of completeness, we include our analysis. In summary, we see no reversible error in the additional arguments of the Club on the merits.

### 1. Traffic Report

Council correctly determined the Plan failed to comply with SALDO Section 405.2.I because it does not demonstrate the Club can provide adequate street access given the narrow 18-foot cartway on Kokomo Avenue. See WALTER M. KULASH, RESIDENTIAL STREETS, 23 (3d ed. 2001) (where parking is provided on *one* side of the street, a 24-26-foot-wide cartway is the most appropriate width); Borough Review #4 at 2-3. Here Kokomo Avenue would have parking on both sides of the street.

### 2. Compliance with ZHB Decision (Turnaround Requirement)

Council correctly determined the Plan failed to comply with SALDO Section 502.4(F)(1), which requires that "the minimum radius to the pavement edge or curb line shall be fifty (50) feet, and the minimum radius of the right-of-way line shall be sixty (60) feet." R.R. at 401a. This results in a minimum diameter of the right-of-way to be 120 feet. Neither the Plan nor the Alternate Plan Sheet provide for a 120-foot right-of-way diameter.

### 3. Length of Cul-de-Sac Streets

Council correctly determined the Plan failed to comply with SALDO Section 502.4D which requires that a cul-de-sac or dead-end street serving a commercial or industrial use shall be adequate for the type of use served and shall not exceed 800 feet in length. The banquet facility would qualify as an expanded commercial use on Kokomo Avenue, which already exceeds 1,500 feet, thereby increasing the safety concerns on the existing narrow 18-foot cartway. As such, the Borough did not abuse its discretion in determining the Plan failed to comply with SALDO Section 502.4D.

### 4. Fire Hydrant

Council correctly determined SALDO Section 608 requiring the installation of a fire hydrant within 600 feet of the banquet facility. The Borough Engineer disagreed with the Club's initial position that Section 608 does not apply because water will be provided from a private lateral from a main owned and controlled by United Water. Ultimately, the Plan indicated a fire hydrant would be installed within 600 feet of the banquet facility. However, Council, in its decision, noted it is not the Borough's responsibility to contact utility service providers on behalf of a SALDO applicant.

Standing alone, the Plan's alleged noncompliance with SALDO Section 608 cannot support denial of the Plan. The Club persuasively argues that this detail could have been made a condition of final approval. The Club needs only to provide clarification on what entity will pay for the installation of the fire hydrant and provide assurance that the hydrant will be installed. See Borough

33

Review #4 at 10.  However, because there are so many meritorious reasons for denying the Plan, this issue would not require reversal by itself.

### 5. Engineer Comments in Borough Review #4

The Club further asserts the Borough Engineer's Comments in Borough Review #4 do not contain sufficient grounds to justify denial of the Plan. To the extent the comments involve the improvements to the Kokomo Avenue extension or cul-de-sac turnaround, they were adequately addressed in the Council's Decision.

Further, Council's November 26, 2014 decision does not deny the Plan based on the Club's noncompliance with the Borough Engineer's comments regarding the Plan's compliance with the sanitary sewer, water utility or automatic sprinkler system.  As such, they are irrelevant to this appeal.

### F. Bad Faith Actions of Council
### 1. Argument

The Club's final argument is procedural in nature.  It contends Council acted in bad faith during its review of the Plan by failing to provide guidance on the application of conflicting requirements of the SALDO, by taking unreasonable legal positions and refusing to discuss the interpretation of conflicting SALDO provisions, and by allowing Council President to participate in the decision on the Plan despite his clear appearance of bias.  The Club asserts it was readily apparent that the Borough's goal during the review process was to

manufacture any excuse to deny the Plan. In doing so, Council violated its duty to review the Plan in good faith.

In addition, the Club asserts Council acted in bad faith and abused its discretion by permitting Council President Brian Foster (Council President) to participate in deliberation on the Plan. In reviewing the Plan, Council acted in its adjudicative capacity. Prin v. Council of the Municipality of Monroeville, 645 A.2d 450 (Pa. Cmwlth. 1994). Therefore, the Club contends, Council is held to a higher standard of objectivity than when acting in a legislative capacity. As such, Council must avoid not only actual bias, but also the appearance of bias or impropriety. Newton Twp. Bd. of Supervisors v. Greater Media Radio Co., 587 A.2d 841 (Pa. Cmwlth. 1991). In order to avoid bias, a council member with a personal or pecuniary interest that is direct and immediate is required to recuse. Borough of Youngsville v. Zoning Hearing Bd. of Borough of Youngsville, 450 A.2d 1086 (Pa. Cmwlth. 1982).

Here, Council President's wife apparently has an ownership interest in a property fronting on Kokomo Avenue in the immediate vicinity of Parcel 9. See R.R. at 344a-46a. Notably, however, the Club identifies a woman named "Heather Nelson" as Council President's wife. See Appellant's Br. at 43-44. Although Ms. Nelson, who resides at 274 Kokomo Avenue, offered comments before Council in opposition to the Plan, she did not identify herself as Council President's wife. (R.R. at 355a-56a). Given the difference in surnames (Foster/Nelson), and the fact that Ms. Nelson's status as Council President's wife are not reflected by the

35

Council meeting minutes, we believe the Club mistakenly refers to Ms. Nelson as Council President's wife.

Nonetheless, it appears Council President's wife is a member of a partnership with an interest in 274 Kokomo Avenue. See R.R. at 345a. Given the possible personal or business relationship between Council President, his wife and Ms. Nelson, we interpret the Club's argument that Council President's relationship with his wife and Ms. Nelson sufficed to require his recusal from consideration of the Plan. The Club asserts it is hard to imagine how Council President could be unbiased under these circumstances. Thus, Council President's failure to recuse himself is further evidence of the Borough's refusal to act in good faith.

## 2. Analysis
### a. Generally

Where a land development plan fails to comply with the substantive requirements of the subdivision ordinance, its rejection is within the discretion of the governing body. Herr v. Lancaster Cnty. Planning Comm'n, 625 A.2d 164 (Pa. Cmwlth. 1993). A single substantive reason may support the application for denial of a subdivision plan. Kassouf v. Twp. of Scott, 883 A.2d 463 (Pa. 2005).

### b. Findings of Fact

The primary problem with the Club's assertions of bad faith now is that they are not based on any facts as found by the fact-finder, the Council. Moreover, the trial court did not take additional evidence, and it did not act as a fact-finder. See Robert Simpson, Thomas M. DelRicci, Joshua S. Mazin, The

36

Duty of Good Faith Review in Pennsylvania Land Development Proceedings, 80 Pa. B.A.Q. 139, 152 (2009) (in all cases where municipality was found to have breached duty of good faith review, there was active involvement of a court to facilitate fact-finding). Given that there were no findings on the issue of bad faith, it is not surprising that the trial court did not discuss the issue.

In any event, Council denied the Plan for several substantive reasons. Council determined the Plan failed to comply with specific provisions of the SALDO by not including the entire tract boundaries of Parcel 8 despite the significant land development proposed for the tract related to the Kokomo Avenue extension and cul-de-sac turnaround. The Plan also failed to comply with SALDO standards for the widening of the Kokomo Avenue cartway, the required area for the cul-de-sac turnaround, and the installation of sidewalks and curbing along Kokomo Avenue. Further, the Plan failed to comply with requirements that it include dedication statements for the property needed for the Kokomo Avenue extension, Easement Area, and cul-de-sac turnaround.

### c. Unreasonable Legal Positions

The Club contends Council acted in bad faith by taking unreasonable legal positions and refusing to discuss conflicting provisions of the SALDO, which we presume to involve the requirements for a cul-de-sac turnaround in SALDO Section 502.3.A (Table 1), which requires a minimum right-of-way diameter of 100 feet for a cul-de-sac turnaround. See R.R. at 398a, 400a. The Club offered a last-minute alternative proposal which included a turnaround that met the 100-foot right-of-way diameter requirement. However, as discussed above, these proposals

would not fit within the Kokomo Avenue extension and Easement Area.  See Borough Review #4 at 7; R.R. at 311a.  As such, the Club would need to dedicate additional land, which the Plan did not do.  Id.

In addition, SALDO Section 502.4(F)(1) requires a minimum radius of the right-of-way line of 60 feet.  R.R. at 401a.  This would yield a right-of-way diameter of 120 feet.  Although the Club asserts it offered a last minute alternative plan sheet that met the 100-foot right-of-way diameter requirement in SALDO Section 502.3.A (Table 1), Council, however, determined that the Club's alternative proposal failed to dedicate sufficient land to meet the 120-foot right-of-way diameter requirements of Section 502.4(F)(1).  Council Dec. at ¶3.

Municipal refusal to review tardy submissions could be part of an overall pattern of bad faith.  Duty of Good Faith Review, 80 Pa. B.A.Q. at 155. Without more, however, this conduct rarely results in reversal of municipal action, because there is a reciprocal duty on the developer not to make tardy submissions. Id. n.76, citing Kassouf; Shelbourne Square Assoc. v. Twp. of Exeter, 794 A.2d 946 (Pa. Cmwlth. 2002); Schultheis v. Up. Bern Twp., 727 A.2d 145 (Pa. Cmwlth. 1999); see also Abarbanel v. Solebury Twp., 572 A.2d 862 (Pa. Cmwlth. 1990). Given the totality of the circumstances here, Council's determination that the Plan does not comply with the cul-de-sac turnaround requirements in the SALDO is supported by substantial evidence in the record and does not reveal a basis for reversing Council on the good faith review issue.

38

**d. Council President**

With respect to Council President's participation in Council's decision denying the Plan, the Borough Solicitor provided Council President a written opinion stating that Council President was not required to recuse himself under the circumstances here. See R.R. at 344a-46a. In his letter, the Borough Solicitor cited Piccollella v. Lycoming County Zoning Hearing Board, 984 A.2d 1046 (Pa. Cmwlth. 2009), where this Court noted that generally, a recusal is warranted where a member of the tribunal participates as advocate or witness, publicly expresses predisposition, or has a fiduciary relationship with a party in interest. However, a tangential relationship between a tribunal member and the litigation, without evidence of bias or prejudice, capricious disbelief or prejudgment, is insufficient to warrant recusal. Id.

The record shows Council President's wife and Ms. Nelson have a property interest in 274 Kokomo Avenue. R.R. at 345a, 355a. This may be sufficient to trigger judicial scrutiny, but it is not sufficient to compel the significant remedy of invalidation. Piccollella. Neither owning property near a development nor a marital relationship is sufficient to require recusal absent allegation of actual bias or improper influence. Id.

The Club does not allege actual bias on Council President's part based on his wife's Kokomo Avenue interest or Ms. Nelson's profound objections to the proposed banquet facility. Nor is there a suggestion that Council President participated as an advocate or witness, or publicly expressed predisposition. Therefore, we cannot conclude that Council acted in bad faith by following written

39

legal advice and allowing Council President to participate in Council's review and denial of the Plan. Id.

For all these reasons, we reject the Club's contention that Council failed to comply with its duty to act in good faith in its review of the Plan. Kassouf.[5]

## IV. Conclusion

In light of the above discussion, we discern no error or abuse of discretion in the trial court's order affirming Council decision denying the Club's application for approval of its a Preliminary/Final Land Development Plan. Accordingly, we affirm.

ROBERT SIMPSON, Judge

Judge Brobson did not participate in the decision in this case.
Senior Judge Colins dissents.

---

[5] Moreover, the appropriate remedy would be to remand to the trial court, for further remand to Council, for good faith review, not outright reversal. Robert Simpson, Thomas M. DelRicci, Joshua M. Mazin, The Duty of Good Faith Review in Pennsylvania Land Development Proceedings, 80 Pa. B.A.Q. 139, 142, n.16 (2009) (citing Highway Materials, Inc. v. Whitemarsh Twp., 974 A.2d 539 (Pa. Cmwlth. 2009)).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hummelstown Swim Club, : 
                Appellant : 

                  : 

          v. : No. 141 C.D. 2016

                  : 

Borough of Hummelstown : 

## **O R D E R**

**AND NOW**, this 16th day of May, 2017, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Dauphin County is **AFFIRMED**.

 

                                              _____

                                              ROBERT SIMPSON, Judge