# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates and : 
L&R Partnership, :
            Appellants :
                   :
          v. : No. 1149 C.D. 2017
                   : Argued: March 8, 2018
East Brandywine Township Board :
of Supervisors and Carlino :
East Brandywine, L.P. :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI               FILED: April 19, 2018


       Brandywine Village Associates (BVA) and L&R Partnership (L&R) (collectively, Objectors) appeal the order of the Court of Common Pleas of Chester County (trial court) affirming a decision by the Board of Supervisors (Board) of East Brandywine Township (Township) granting conditional preliminary approval of a Preliminary and Final Land Development Plan filed by Carlino East Brandywine, L.P. (Developer) for the construction of a mixed-use development on a 10-acre parcel that it owns in the Township.

# I.

Developer is the equitable owner of an undeveloped tract of land located at 1279 Horseshoe Pike in East Brandywine Township, Chester County, Pennsylvania, containing approximately 10.118 acres (Property). The Property was originally part of a 21-acre parcel. BVA owns the remaining 11 acres, which contain a shopping center adjacent to the east side of the Property.

Prior to Developer's acquisition of the Property, BVA had certain rights to use the 10-acre parcel under a Cross Easement Agreement entered into with Developer's predecessor in title. Because the entire 21 acres did not have access to any public sewer, the Cross Easement Agreement provided that BVA would build, at its expense, a sewer plant for the use of both parties on the 10-acre parcel. The Cross Easement Agreement also granted BVA an easement to the 10-acre parcel for stormwater management as well as an access easement to use the 10-acre parcel as a main entrance to BVA's shopping center.[1] L&R, the general partner of BVA, is the owner of an undeveloped parcel of land adjacent to the north side of the Property.

---

[1] Under the Cross Easement Agreement, the predecessor-in-interest granted BVA a sewer system easement to install an on-site septic sewer system, including a drainage area and reserve drainage area. It also provided an access easement to allow construction of a roadway through the Property to BVA property. The Cross Easement Agreement specified that the access drive could be modified, but that it must not "interfere with the flow of traffic . . . or with surface water drainage." (Reproduced Record (R.R.) at 205a.) The Cross Easement Agreement further provided a highway improvement easement, dedicating land within the ultimate right-of-way along Route 322 to public use, and a stormwater basin and drainage easement, which included a reserve effluent disposal area.

## II.

Throughout this dispute, Developer has submitted numerous versions of land development plans pertaining to the Property, all of which have been opposed by Objectors. Although this matter was before us previously, we quashed that appeal because what we were being asked to provide was an advisory opinion. Further complicating this is that the parties do not clearly state the issues presented to this Court on appeal. All of this is to say, be prepared (once again) for the procedural slog that follows.

## A.

Since 2010, Developer has submitted land development plans to build a 51,525 square-foot supermarket with a 9,250 square-foot expansion area, a 4,600 square-foot attached retail building, and a pad site for a 4,088 squar-foot bank on the Property. From the beginning, the Township insisted that Developer provide and pay for the construction of a road (Connector Road) connecting the Property with Horseshoe Pike (Route 322) on which it fronts and North Guthriesville Road.

Because the Connector Road was to cross over L&R's adjoining property, in 2014, the Township and Developer entered into a Memorandum of Understanding (MOU). Under this MOU, Developer, in lieu of paying a significant portion of the Township's transportation impact fee of $1,795,000, was obligated to design, permit and construct at its expense the Connector Road and dedicate it to the Township. The MOU also provided that the Township would condemn necessary portions of L&R's adjoining property as well as BVA's easements on the Property granted under the Cross Easement Agreement.

3

**B.**

Although Developer has submitted several different versions of land development plans pertaining to the Property, there are two particular preliminary plans that have been subject to much litigation. The first of those plans was filed on December 9, 2014 (2014 Plan). Therein, Developer treated and identified the Connector Road as a "driveway," notwithstanding that it would eventually be dedicated to the Township as a public road. The 2014 Plan also included the area under the "driveway" as part of Developer's land area. The 2014 Plan did not identify the previously condemned BVA easements on the Property.

In January 2015, the Board conditionally approved the 2014 Plan (Original 2015 Decision). Objectors appealed that decision on February 20, 2015 (2015 Appeal) and Developer intervened.

**C.**

Before the trial court, Objectors alleged, *inter alia*, that the 2014 Plan contained numerous defects, including the following:

- It did not comply with the Township's Zoning Ordinance (Zoning Ordinance) requirement of a minimum 10-acre area to build a mixed-use development in a Mixed Use (MU) zoning district.[2]

- It did not comply with Section 399-46.C of the Zoning Ordinance, requiring that "[n]o building shall be

---

[2] Section 399-46.A of the Zoning Ordinance provides that "[a] minimum gross tract area of 10 acres shall be required for any use or combination of uses permitted in the MU District." (R.R. at 136a.)

4

situated less than 85 feet from the front lot line" because the bank building, as designed on the 2014 Plan, is set back 50 feet from the Connector Road. (R.R. at 136a.) Developer argued that the Connector Road was merely a private driveway until such time as it is dedicated to the Township, and therefore, the 85-foot setback requirement is inapplicable.

- Even though the Property was going to be connected to the public sewer system, the 2014 Plan violated Section 399-47.K[3] of the Zoning Ordinance, providing that sewage facilities must be in compliance with the Township's Subdivision and Land Development Ordinance (SALDO), Sections 350-47.B(2)[4] & 350-48.[5] BVA argued that this

___

[3] Section 399-47.K of the Zoning Ordinance provides:

Sewage facilities and water supply. The applicant's proposals for sewage facilities and for water supply (both quality and quantity) in relation to the proposed uses shall be in compliance with the requirements of §§ 350-47 and 350-48, respectively, of Chapter 350, Subdivision and Land Development. Any approval of an application for development within the MU District shall be contingent upon the requisite approvals and certifications from the Chester County Health Department and/or the Pennsylvania Department of Environmental Protection.

(R.R. at 137a.)

[4] Section 350-47.B(2) of the SALDO provides in pertinent part:

All subdivisions and land developments shall be self-sustaining relative to the storage and disposal of treated sewage effluent. The applicant shall provide sufficient storage and land area on or off the subdivision or land development site to store and dispose of all treated sewage effluent which is generated by the uses on the site by means of conventional underground seepage beds or drip irrigation.

(R.R. at 616a.)

[5] Section 350-48 of the SALDO pertains to water supply. (R.R. at 160a.)

5

provision was incorporated into the Zoning Ordinance and could not be waived.

- It did not comply with Section 399-81.E[6] of the Zoning Ordinance because Developer failed to provide safe and efficient ingress and egress from Route 322 over the combined Connector Road to BVA's shopping center.

- It did not comply with Section 399-47.N[7] of the Zoning Ordinance, regarding stormwater management.

---

[6] Section 399-81.E of the Zoning Ordinance provides that to minimize traffic congestion and encourage "orderly development of street highway frontage," an applicant is responsible for providing:

> [S]afe and efficient ingress and egress to and from public streets, without undue congestion or interference with normal traffic flow within the Township. The developer shall be responsible for the design, construction, and costs of any necessary traffic control devices and/or highway modifications required by the Township and/or the Pennsylvania Department of Transportation.

(R.R. at 141a-42a.)

[7] Section 399-47.N of the Zoning Ordinance provides:

> The tract of land to be developed shall be in one ownership, or shall be the subject of an application filed jointly by the owners of the entire tract, and shall be under unified control. If ownership of the entire tract is held by more than one person or entity, the application shall identify and be filed on behalf of the said owners. Approval of the plan shall be conditioned upon agreement by the applicant or applicants that the tract shall be developed under single direction in accordance with the approved plan. If ownership of the tract changes subsequent to approval of the plan, no site preparation or construction by such new owner or owners shall be permitted unless and until such owner or owners shall review the terms and obligations of the approved plan and agree in writing to be bound thereby with respect to development of the tract.

(R.R. at 137a-38a.)

6

Objectors then filed a motion for an additional evidentiary hearing, which the trial court granted, remanding the matter to the Board to take additional evidence. The Board conducted five hearings during which Objectors presented additional evidence in opposition to the 2014 Plan. In September 2015, because the parties disagreed as to the parameters of the Board's obligation following the conclusion of the hearings, the trial court issued an order requiring the Board to consider all evidence presented on remand and to make a decision based upon the entire record.

Then, in a decision dated October 1, 2015 (Revised 2015 Decision), the Board reversed the Original 2015 Decision granting conditional approval of the 2014 Plan. It did so because it found that the 2014 Plan was deficient in that it violated certain ordinance provisions dealing with street design, stormwater management and treatment of sewage effluent. The Board did not revisit other issues that Objectors raised regarding the defects in the plan.

**D.**

Developer appealed the Revised 2015 Decision to the trial court. However, pursuant to a stipulation of the parties approved by the trial court, Developer withdrew that appeal and the parties agreed that they could raise all issues related thereto in the still-pending appeal of the Original 2015 Decision.

On October 22, 2015, Developer filed a new Preliminary/Final Land Development Plan (2015 Plan), which was substantially similar to its previous plans and, once again, included a Connector Road through Developer's property and

addressed the issues raised in the Revised 2015 Decision. The 2015 Plan was last revised on December 9, 2015.

The Board conditionally approved the 2015 Plan on April 20, 2016 (2016 Approval), subject to Developer providing an updated Traffic Impact Study for the proposed development and complying with any recommendations of the Township traffic engineer. As pertinent, the Board also granted a requested waiver of § 350-47.B.2 of SALDO (sewage effluent requirements) and Section 350-40.N.2 of SALDO (radius requirements for non-residential driveways). The Board also determined that Developer "shall comply with the provision of § 350-36 [of SALDO] (Acceleration, deceleration and turning lanes) or request a waiver of the same from the Board." (R.R. at 17a.)

Objectors appealed, raising almost identical issues to those raised against the 2014 Plan. And, once again, the trial court sent the matter back to the Board, which then conducted three evidentiary hearings where Objectors presented substantially similar testimony.

The 2015 Plan that was conditionally approved by the Board in the 2016 Approval is, ultimately, the subject of the instant appeal.

## III.

While resolution of Objectors' appeal of the 2016 Approval was still pending, on January 6, 2017, the trial court issued an Opinion and Order granting, in part, Objectors' appeal of the Original 2015 Decision. Notwithstanding, the trial

court rejected numerous arguments offered by Objectors and made the following pertinent findings:

- **Setback requirement**: As to Objectors' contention that Developer's proposed bank building must be set back 85 feet from both Route 322 and the proposed Connector Road,[8] the trial court found that the development tract is a single lot within the meaning of the Zoning Ordinance fronting on Route 322. It found that meant the proposed bank building is not required to be set back 85 feet from the Connector Road, only Route 322.

- **Minimum Lot Area**: Objectors contended that the 2014 Plan violated Section 399-46.A of the Zoning Ordinance, requiring that a development in a MU zoning district must have a minimum lot area of 10 acres because the area of the easements previously granted to BVA under the terms of the Cross Easement Agreement must be netted out from the gross tract area of 10.189 acres, leaving only a net lot area of 9.189 acres. The trial court rejected that argument because the Township's taking of BVA's easements on the Property did not take Developer's

---

[8] Section 300-17 of the Township's Land Use Ordinance, provides: "Building Setback Line. An established line within a property defining the minimum required distance between any principal building and the adjacent right-of-way line of the street on which it fronts, to provide the front yard specified by Chapter 399." Available at: https://ecode360.com/31873664 (last visited March 16, 2018). Section 399-46.C of the Zoning Ordinance provides: "Minimum front yard. No building shall be situated less than 85 feet from the front lot line." (R.R. at 136a.) Pertinent terms are defined in Section 399-9 of the Zoning Ordinance. The term "lot" is pertinently defined as a "parcel of land, undivided by any street or dedicated future street right-of-way." (R.R. at 119a.) The front yard is defined as "[a] yard extending the full width of the lot, along the front lot line and extending in depth from the front lot line to the nearest point of a structure on the lot. . . ." (R.R. at 134a.) The Zoning Ordinance defines the term, "lot line" as "[a] property boundary line of any lot held in single and separate ownership. . . ." (R.R. at 120a.) A front lot line is defined as "[a] lot line abutting any street and coinciding with any street line." (R.R. at 120a.) The term "street line" is defined by the Zoning Ordinance, in pertinent part, as "[t]he dividing line between a lot and the outside boundary or right-of-way of a public street, road, or highway legally open or officially platted. . . ." (R.R. at 129a.)

underlying fee simple so that the land could be counted as complying with the land area requirement.

- **Traffic**: Objectors also contended that the proposed Connector Road is of inadequate width to provide for safe and efficient ingress and egress for delivery trucks to enter and exit both the development and BVA's center, arguing that tractor trailers attempting to make required turning movements from Route 322 onto the Connector Road will be required to encroach on opposing travel lanes and raised concrete medians. Adopting the opinion of the Township engineer, the trial court found that Objectors did not prove the proposed access is either unsafe or inefficient and that the Board did not commit error in declining to deny the plan based upon that alleged violation.

However, the trial court agreed with the Township that the plan was deficient in that it constricted the turning movements for tractor-trailers accessing the supermarket loading dock located at the rear of the Property. Ultimately, it went on to find that this issue could be rectified by adjusting the guardrails or an increase in the loading zone area.

- **Stormwater Management**: The trial court affirmed the Board's finding that the 2014 Plan violated Section 399-47.N of the Zoning Ordinance, requiring that stormwater facilities must be located on a tract of land under one ownership, because permanent stormwater facilities are shown as being outside the development tract owned by either Developer or the Township. The 2015 Plan depicted those facilities as located on L&R's land. It noted though that the 2015 Plan has been subsequently revised to locate those facilities within the area condemned by the Township for the Connector Road.

- **Sewage Effluent**: The trial court agreed with the Board that the 2015 Plan was deficient because it failed to provide the required effluent disposal area either on the development tract or elsewhere. However, it found that this was easily correctable because the new center will be connected to the public sewer system because the Board is empowered to grant a waiver from this SALDO regulation

pursuant to Section 503(8) of the Pennsylvania Municipalities Planning Code (MPC)[9] upon meeting the standard for waiver.

However, the trial court disagreed with Objectors' argument that because Section 399-47.K of the Zoning Ordinance incorporates the SALDO provision, the MPC's traditional zoning variance hardship standards apply rather than the waiver requirement within the MPC. The trial court found that argument meritless because the Zoning Ordinance merely references the necessity of a developer's compliance with the SALDO provision, but does not incorporate it into the Zoning Ordinance.

Objectors appealed to this Court, arguing that the trial court erred in finding that: (1) Developer did not violate the front-yard setback requirement in the Zoning Ordinance; (2) SALDO's requirement to set aside land for sewage effluent is not a zoning regulation by incorporation; and (3) Developer met its burden to establish that its 2014 Plan provided safe and efficient ingress and egress.

However, because Objectors were the prevailing party below, the Township requested for the appeal to be quashed because Objectors lacked standing to bring the appeal. In response, Objectors argued that they were aggrieved by the

---

[9] Section 503(8) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10503(8), provides:

> Provisions for administering waivers or modifications to the minimum standards of the ordinance in accordance with section § 512.1 when the literal compliance with mandatory provisions is shown to the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

trial court's determinations because in any future appeals, Objectors will be estopped from raising issues the trial court decided against them.

Ultimately, we agreed with the Township and quashed Objectors' appeal for lack of standing. Rejecting Objectors' concern, we further explained, "**collateral estoppel will not apply to those determinations** because those purportedly adverse determinations against Objectors, as the prevailing party, were not 'essential' to the judgment below." *Brandywine Village Associates v. East Brandywine Township Board of Supervisors* (Pa. Cmwlth., No. 164 C.D. 2017, filed January 5, 2018) (citing *Callowhill Center Associates, LLC v. Zoning Board of Adjustment*, 2 A.3d 802, 809 (Pa. Cmwlth. 2010)) (emphasis added) ("*Brandywine I*").

## IV.

Prior to our disposition of *Brandywine I*, the trial court issued an order dated July 18, 2017 (2017 Decision) denying Objectors' appeal of the 2016 Approval. And, of course, that decision, which is the subject of this appeal, construed the Original 2015 Decision as **denying** Objectors' appeal of the 2015 Approval, finding that any issue also raised by Objectors in the Original 2015 Decision **were barred by the doctrine of collateral estoppel**.

Notwithstanding, the trial court went on to resolve various issues on appeal. For instance, for the first time, Objectors challenged the Board's granting a waiver of: (1) Section 350-40.N.2 of SALDO, which requires that non-residential driveways have a minimum radius of 30 feet; and (2) Section 350-36, which pertains to deceleration lanes. Objectors also reasserted their challenge to the waiver of a

12

sewage effluent provision, contending that because Section 399-47.K of the Zoning Ordinance incorporates SALDO provision, the MPC's traditional zoning variance hardship standards apply rather than the waiver requirement within the MPC.

The trial court rejected each of Objectors' challenges. As pertinent, it found that waiver of Section 350-40.N.2 (radius requirements for non-residential driveways) was proper because the credible testimony offered by both traffic experts established that "literal enforcement of the radius requirement . . . would require shifting the Connector Road to the West, thereby reducing the separation of traffic signals on Route 322 . . . . [and] would not improve Brandywine Center's access, which is fixed by the existing travel isles within that development." (Trial Court Opinion dated July 18, 2015 at 25-26.) The trial court rejected Objectors' contention that waiver of Section 350-47.B.2 of SALDO (pertaining to sewage effluent) was not permitted because it was incorporated under the Zoning Ordinance. The trial court also found their challenge to the purported waiver of Section 350-36.B.3 (pertaining to deceleration lanes) meritless because the Connector Road was not, in fact, a deceleration lane. This appeal followed.[10]

## V.

Although neither party acknowledges our disposition of *Brandywine I*, upon review, it is obvious that the trial court erred when concluding that the Original

---

[10] In a land use appeal where a full and complete record was made and the trial court took no additional evidence, our scope of review is limited to determining whether the board committed an error of law or an abuse of discretion. *In re Brandywine Realty Trust*, 857 A.2d 714 (Pa. Cmwlth. 2004).

2015 Decision denied Objectors' appeal and that all issues identical to those raised in the previous decision were barred under the doctrine of collateral estoppel. Notwithstanding, because the Board serves as factfinder and the trial court took no additional evidence below, we still reach each of Objectors' challenges against conditional preliminary approval of the 2015 Plan.

## A.

It is beyond well settled that a preliminary plan must be approved if it meets all specific, objective requirements under a subdivision and land development ordinance. *Herr v. Lancaster County Planning Commission*, 625 A.2d 164 (Pa. Cmwlth. 1993). The preliminary plan is essentially conditional in nature in that after its approval, the developer must still fulfill all the requirements to obtain final approval. *Graham v. Zoning Hearing Board of Upper Allen Township*, 514 A.2d 236 (Pa. Cmwlth. 1986). Consequently, even where the preliminary plan fails to comply with the objective, substantive requirements, the governing body may in its discretion either reject the plan outright or grant conditional approval. *Schultheis v. Board of Supervisors of Upper Bern Township*, 727 A.2d 145 (Pa. Cmwlth. 1999). Further, the preliminary plan containing minor defects correctable by amendment must be approved subject to a condition that necessary corrections be made. *Shelbourne Square Association v. Board of Supervisors of Township of Exeter*, 794 A.2d 946 (Pa. Cmwlth. 2002). Once a preliminary application has been approved, the applicant is entitled to final approval in accordance with the approved preliminary plan.

Section 503(8) of the MPC, 53 P.S. § 10503(8), expressly authorizes a municipality to enact provisions for administering waivers or modifications of literal compliance with the provisions of its SALDO. It provides:

> The subdivision and land development ordinance may include, but need not be limited to: . . . (8) Provisions for administering waivers or modifications to the minimum standards of the ordinance in accordance with section 512.1, when the literal compliance with mandatory provisions is shown to the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

*Id.* Moreover, Section 512.1 of the MPC[11] vests discretion with the Township to grant or deny waivers.

> (a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.
>
> (b) All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary.

---

[11] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 40 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1.

Section 350-62 of SALDO, entitled "Relief from unnecessary hardship," sets the Board's authority to grant a waiver.

> A. In any case in which an applicant demonstrates to the satisfaction of the Board that strict application of any provisions of this chapter would be unreasonable and would cause unnecessary hardship as applied to the proposed subdivision or land development, the Board may grant a modification of such provision so as to grant relief from the unnecessary hardship. Any such modification granted shall be the least modification necessary to grant relief from the unnecessary hardship and shall be applied so that substantial justice may be done and the public interest secured; provided, however, that such modification shall not be granted if it would have the effect of nullifying the intent and purpose of this chapter.
>
> B. In granting modifications, the Board may impose such conditions as will, in its judgment, secure substantially the objectives of the standards and requirements so modified.[12]

**B.**

Objectors contend that the trial court erred in finding that the proposed bank building is not required to have an 85-foot setback from the Connector Road. Section 399-46.C of the Zoning Ordinance provides a setback of 85 feet for all buildings from the front lot line. Section 399-9 of the Zoning Ordinance defines a "front lot line" as:

> The lot line abutting **any street** and coinciding with any street line. In the case of a corner lot, each of the two (or

---

[12] Although not provided in the Reproduced Record, SALDO Section 350-62 is available at: https://ecode360.com/11881470 (last visited March 16, 2018).

16

more) street-abutting lot lines shall be considered a front lot line. In the case of an interior lot, the front lot line shall be the line most parallel and closest to the **street line** at the end of the access strip; all other lines shall be side or rear lot lines.

(R.R. at 120a) (emphasis added). Furthermore, "street" is defined in Zoning Ordinance § 399-9 as:

A right-of-way intended for general public use to provide means of approach for vehicles and pedestrians. The word "street" includes the words "road," "highway," "thoroughfare," and "way."

(R.R. at 129a.) "Street line" is defined in Zoning Ordinance § 399-9 as:

The dividing line between a lot and the outside boundary or right-of-way line of a public street, road, or highway legally open or officially platted, or between a lot and a privately owned street, road, or way over which the owners or tenants of two or more lots, each held in single and separate ownership, have the right of way. (*Id.*)

Central to this dispute is Developer's insistence that the Connector Road is actually a "driveway."[13] If it is found that the Connector Road is a "street," then the setback requirement stated above will become applicable.

---

[13] Section 300-17 of the Township's Land Use Ordinance defines a "Driveway" as "A private means of vehicular access from a public or private street to a single lot." Available at: https://ecode360.com/31873664 (last visited March 16, 2018).

We disagree with Developer that the Connector Road is a "driveway" because that position is inconsistent with the purpose of the underlying taking, the 2015 Plan, and the MOU between the Township and Developer. The 2015 Plan specifically provides in a note that the purported driveway "will be ultimately used as a public road." (R.R. at 181a.) This note is consistent with the MOU that Developer entered into with the Township, which provides:

> In order to support existing volumes of traffic and traffic projected to be generated by new growth and development in the Township, the Township has an interest in creating a new public road connecting Horseshoe Pike to North Guthriesville Road ("Connector Road").

> The Connector Road would traverse the eastern side of the Carlino Property and extend northward through [L&R's property].

> * * *

> **The Connector Road is intended as a public road for use by the general public and is not necessary for the development of [Developer's] Property**. The Township has made an independent judgment that the Connector Road is in the public interest and for a public purpose.

> The Township has informed Developer that the Township would like the Connector Road constructed by Developer in connection with development of the Project.

> * * *

> In the event the Project receives final land development approval and all necessary permits, Developer will, at its sole expense, design, permit and construct the Connector Road in conjunction with the Project, in accordance with Township and Pennsylvania Department of Transportation requirements, and when completed, dedicate the Connector Road, the associated right-of-way and all related facilities

18

and improvements to the Township, at no cost to the Township and prior to the issuance of the first certificate of occupancy for a building on the [Developer's] Property.

(R.R. at 83a-85a) (emphasis added).

In a separate action, Objectors raised preliminary objections before the trial court challenging, *inter alia*, the Township's taking for the construction of the Connector Road. The trial court denied those preliminary objections, concluding, in pertinent part, that the taking was for a public purpose and that the condemnation is intended to be used to construct a public road or street. (*See* Carlino's Brief at Appendix "A," Trial Court Decision filed September 8, 2017 at 28) (citing Section 204(b)(9) of the Eminent Domain Code, 26 Pa.C.S. § 204(b)(9)).

Because the Connector Road is obviously a "right-of-way intended for general public use," Zoning Ordinance § 399-9, the Board erred when determining that it is a "driveway" that does not require an 85-foot setback.[14]

---

[14] As previously mentioned, in *Brandywine I*, a different trial judge determined that the proposed bank building is not required to be set back 85 feet from the Connector Road, only Route 322. As that trial judge reasoned, the bank building's development tract was a single lot and not a "corner lot" because "the proposed driveway does not create a subdivision of the Carlino development tract." (Trial Court Opinion dated January 6, 2017 at 10-11.) In the decision now before us on appeal, the trial court did not revisit this issue, summarily deeming any further discussion collaterally estopped. Developer also does not raise the issue on appeal.

In any event, in light of our determination that the Connector Road is a "street," it is clear that the bank building's 85-foot setback must be measured from the Connector Road. Section 399-46.C of the Zoning Ordinance provides: "Minimum front yard. No building shall be situated less than 85 feet from the **front lot line**." (R.R. at 136a) (emphasis added). A front lot line is defined as "[a] lot line abutting **any street and coinciding with any street line**." (Section 399-9 of the Zoning Ordinance, R.R. at 105a-135a.) A "street line" is defined as "[t]he dividing line between a **(Footnote continued on next page…)**

Objectors next contend that the 2015 Plan contains multiple violations of Zoning Ordinance Section 399-81.E, which provides that to minimize traffic congestion and encourage "orderly development of street highway frontage," an applicant is responsible for providing:

> [S]afe and efficient ingress and egress to and from public streets, without undue congestion or interference with normal traffic flow within the Township. The developer shall be responsible for the design, construction, and costs of any necessary traffic control devices and/or highway modifications required by the Township and/or the Pennsylvania Department of Transportation.

(R.R. at 141a-42a.) Objectors argue that they produced two professional engineers who testified that the narrow layout and location of the Connector Road created turning radii that prevent standard-size delivery trucks from making any normal turning movements into BVA's property without either: (1) crossing into left-turn lanes to make right-hand turns or (2) encroaching into and blocking opposing traffic lanes on the Connector Road.

---

**(continued…)**

lot and the outside boundary **or right-of-way of a public street, road, or highway** legally open or officially platted. . . ." (*Id.*) (emphasis added). Significantly, a corner lot is "[a] lot at the junction of and abutting **two or more intersecting streets** . . . **Each yard abutting a street shall be considered a front yard**." (*Id.*) (emphasis added).

Having determined that both Route 322 and the Connector Road are public "streets" that intersect with the bank building, that development tract is obviously a corner lot and must have an 85-foot setback from the front lot line abutting the Connector Road.

However, both the Township engineer and the Township traffic engineer determined that the street design in the 2015 Plan provided safe and efficient ingress and egress. Moreover, contrary to Objectors' assertions, the trial court "found no instance in which [the Township traffic engineer] concluded the road intersections were deficient or unsafe. In fact he specifically testified that the Connector Road intersections were not unsafe, and that there were no safety issues." (Trial Court Opinion dated July 18, 2017 at 29-30.) He also disagreed with each of BVA's expert's opinions and testified to the contrary. (*Id*. at 31.)

What we have is a difference of opinion between competing testimonies of experts and the factfinder found the Township experts to be more credible. Obviously, the weight of such testimony and evidence and the acceptance of conflicting testimony is within the Board's sole authority. Regardless, as the trial court correctly noted, "the Board took the path of caution, ordering [Developer] 'to provide an updated Traffic Impact Study for the proposed development', thus mooting this issue." (*Id*. at 32.)

**D.**

Acknowledging that the trial court agreed with the Board that Developer's plan was deficient because it failed to provide the required effluent disposal area either on the development tract or elsewhere, Objectors also challenge the trial court's finding that while Developer has not satisfied the sewage effluent provision in SALDO, it can be waived under Section 503(8) of the MPC, 53 P.S. §10503(8), upon meeting the standard for waiver created by Section 512.1 of the

21

MPC, 53 P.S. §10512.1.  However, as the trial court cogently explained, this assertion is meritless.

> [Developer] proposes to provide public sanitary sewage service to its proposed development, and has obtained approval from both the Township and its Sewage Authority to do so, thereby leading the Board to conclude that an effluent storage area is not required in this instance. Sewage effluent is the end by-product of the treatment of raw sewage.  We addressed the need for a waiver from this Section in our January 6, 2017 Opinion.  [Objectors] had also previously argued that [Developer] needed a variance from Section 399-47.K of the Zoning Ordinance because the latter Section incorporates the Section 350-47.B(2) SALDO provisions, thereby rendering them subject to traditional zoning variance hardship standards.  It pressed the argument that in its future plans [Developer] would be precluded from seeking a waiver of 350-47.B(2).  We found [Objectors'] argument to be meritless.  **Section 350-47.K merely references the necessity of the developer's compliance with the cited sections of the SALDO, but does not by incorporation make them zoning regulations.**  We have previously found that [the Pennsylvania Department of Environmental Protection] approved the Township's expansion of its public sewage system to include both the Watters' Parcel and [BVA's] Property, including the facilities needed to convey and treat raw sewage from those development parcels and dispose of the treated effluent on other land.  Accordingly, we now conclude that the Board is empowered to grant a waiver from this SALDO regulation pursuant to [MPC] Section 503(8), 53 P.S. § 10503(8) upon its determination that [Developer] complies with the standard for waiver created by [MPC] Sections 512.1, 53 P.S. § 10512.1.

(Trial Court's Opinion dated July 18, 2015 at 26-28) (emphasis added).

Simply, Section 399-47.K of the Zoning Ordinance merely references that "the applicant's proposals for sewage facilities and for water supply (both quality and quantity) in relation to the proposed uses shall be in compliance with the requirements of §§ 350-47 and 350-48 [of SALDO]" but does not mention or otherwise state that a party is precluded from seeking waiver of those SALDO provisions. (R.R. at 137a.) Accordingly, we agree with the trial court and reject Objectors' second contention.

**E.**

Objectors also contend that the trial court erred when approving "a waiver to reduce turn radii on the Connector [R]oad which directly increase the already unsafe turn issues detailed by the testimony." (Objectors' Brief at 54.) Here, the 2015 Plan proposes to install a Connector Road, which Objectors will be required to use in order to have access to State Route 322 because BVA's access easements were condemned by the Township. The 2015 Plan shows that the Connector Road has a 25-foot radius at the signalized intersection with Route 322.

Significantly, Section 350-40 of SALDO pertains to "Driveways," and Section 350-40.N.2 provides, in relevant part, that "In order to provide for safe and convenient ingress and egress, private driveway entrances shall be rounded as follows: . . . (2) **For non-residential driveways**, a minimum radius of 30 feet shall be provided. Greater radii may be required where truck traffic is to occur."[15]

---

[15] Available at: https://ecode360.com/11881082 (last visited March 16, 2018).

Obviously, having already decided that the Connector Road is not a driveway but instead a public road, this issue is moot. The radii requirement set forth in Section 350-40.N.2 does not apply because the Connector Road is a "street" and not a driveway.

**F.**

Finally, Objectors contend, without citing any authority, that it was an abuse of discretion for the Board to grant conditional preliminary approval notwithstanding its determination that Developer "shall comply with the provision of §350-36 (Acceleration, deceleration and turning lanes) or request a waiver of the same from the Board." (R.R. at 39a.) They do not, however, dispute the trial court's finding that Section 350-36.B.3 was actually inapplicable because the Connector Road was not a deceleration lane. This contention is wholly meritless. It is beyond settled that a preliminary plan containing minor defects can be approved subject to the condition that those defects are corrected. The Board, in granting the 2015 Plan, simply was doing so under the condition that Developer comply with Section 350-36 or otherwise obtain a waiver of that requirement. In doing so, the Board was obviously not asserting an argument on Developer's behalf or abusing its discretion, but instead alerting Developer on how to resolve certain deficiencies.[16]

Accordingly, while we agree with the Board's disposition of all other issues on appeal, we reverse the trial court's order affirming the Board's decision

---

[16] In any event, Objectors' contention is moot. Because the trial court's unchallenged determination is that the requirements set forth in Section 350-36.B.3 are inapplicable, even if the Board did improperly grant a waiver, that waiver could not even apply to the Connector Road because it was found not to be a deceleration lane.

granting conditional preliminary approval of the 2015 Plan because the Connector Road is a public road and the 2015 Plan does not provide the required 85-foot setback from its front lot line to the building it proposes to construct.

_____
DAN PELLEGRINI, Senior Judge

25

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates and :
L&R Partnership, :
                Appellants :
                :
          v. : No. 1149 C.D. 2017
                :
East Brandywine Township Board :
of Supervisors and Carlino :
East Brandywine, L.P. :

# **O R D E R**

AND NOW, this <u>19th</u> day of <u>April</u>, 2018, it is hereby ordered that the order of the Court of Common Pleas of Chester County in the above-captioned matter is reversed.

_____
DAN PELLEGRINI, Senior Judge